Carr, J.
This case turns wholly upon the construction of the will of If . S. Davis, who died in 1813. It brings again before the court, in a form a little varied, the question so often debated, so often decided, here: Whether a devise to A. and his heirs, or to A. for life, or to A. without words of inheritance, and if A. die without issue, to B. C. and D. or such of them as may then be living, gives an estate tail to the first taker ? And if this were the only question in the case, I should content myself with referring to my former views on the subject in the cases reported, and repeating my steady determination stare decisis. But there is another question which renders it necessary to go farther into the caso.
It is evident that the will in question, drawn probably by the testator himself, is the production of a man ignorant of legal forms, and unused to express his ideas in writing. It. is clumsily and obscurely written. That men should differ in tile construction of such a will, is by no means wonderful. I will briefly offer my conjecture as to the testator’s meaning.
I admit, that it is allowable to transpose the different clauses of a will, where that is clearly seen to be necessary to give distinctness and perspicuity to the ideas of a testator; but it is only in such cases, and then with much caution, that the practice should be indulged. Generally, I think, we are much more apt to attain to the meaning of a writer, by pursuing the order and current in which his thoughts flowed, than by reversing or deranging it. In the present case, it seems to me, that transposition would tend rather to confuse than explain, and is therefore improper.
In the first place, I will dispose of that clause, which in case of the wife’s marrying and again having issue, gives her *390 the disposal of all the property that came by her. This was personal property, none of which is the subject of contest between the parties; and the only remark which seems necessary, is, that I do not consider this clause as having the slightest influence on the meaning of any other clause in the will.
I believe, the testator intended to divide his estate equally between his wife and child : they were naturally nearest and dearest to him; all the provisions of the will look first to them; and it is evident, that he did not mean to extend his bounty to any other objects, so long as they, or the descendants of either of them, were in existence.
. It was strongly contended, that the will contains no words of devise to the daughter, except of a remainder after the devise to the wife; and that, in the other half of the estate, the daughter took a fee by descent as heir of her father: and this was urged, as having an important influence on the construction of the words of the contingent limitation, “ should my daughter Lucy die without issue.” I cannot assent to the position, that Lucy took by descent. The heir, I know, will take by descent whatever is undevised by the will: and even where there is a devise to him of the same estate which he would take as heir, he is said to be in by descent: for Hobart says (Counden v. Clarke, Hob. 30.) “ this is a positive rule, that a man cannot raise a fee simple to his own right heirs, by the name of heirs, as a purchase, neither by conveyance of land, nor by use, nor by devise “ but the devise is void, and it works by descent:” But the same case and others lay it down, “that where another estate is created by the will, than would descend to the heir, or the quality of the estate is altered by the devise, then the will shall prevail though the devisee be heir at law.” I consider it settled law, that in a will the estate may be given by implication, even to the disinheriting of the heir, if such implication be necessary to effect the clear intent of the testator. This is laid down very strongly, in Gardner v. Sheldon, Vaughan’s Rep. 259. and Robinson v. Robinson, *391 4 Burr. 38. and, in 1 Bridg. Ind. 545. under head of Devise by implication, many cases to this point are stated. Every man has the option, either to make a will for him- * self, or to leave his property to be disposed of by the laws of the land. If, however, he undertake to make a will, it is always presumed, that he means to dispose of his whole estate, and not to die intestate as to any part of it; and, in the case before us, this conclusion is rendered clear by the words of the testator, “ as touching such worldly estate as it has pleased God. to bless me with, I do leave it in manner and form following not a part of it, but the whole.
Let us now look more closely at the will. The testator says, “ My will is, that all the money that can be raised from the profits of my estate, after supporting my wife S. and my daughter L¡. in a genteel manner, be applied to the payment of my just debts; and after all my debts are paid, I wish my estate kept together for the mutual benefit of my wife and daughter, until my daughter arrives to full age or marries, or until my wife wishes a division or marries; after which, I wish my estate divided in the following manner: I leave my wife one half of the tract of land whereon I now live, including the buildings, also one half of my estate, during her natural life.” Here we see the wife and daughter coupled together in all things, and forming the sole objects of the testator’s bounty: they are to be genteelly supported: the estate is to be kept together for their mutual benefit, till the daughter comes of age or marries, or the wife wishes a division or marries. Why is the arrival at age or marriage of the daughter, marked as epochs at which a division should take place ? because either of these events would make it necessary, that the daughter should have her portion in severalty : no other reason can be given. The estate was to he held for the mutual benefit of mother and daughter, until the daughter married or came to age, or the mother married, or wished a division, and then to be divided: between whom ? The division, ex necessitate, supposes persons between whom it is to he made : who could they be *392 here, but the wife and child ? Is not this implication irresistible? The division is to be into two equal parts: if nothing more had been said, if there had been no other dis* . . . . position of the estate, except limiting remainders after the ¿eath 0f fhe w¡fe anc{ child without issue; could we hesitate a moment to say, that they took the estate between them, subject to the effect of the limitations over ? But the will goes on: “I leave my wife one half the tract of land I live on &cc. and half my estate he.” What becomes of the other half? I answer, by strong and inevitable implication, it is given to the daughter; if not, we must say the father died intestate as to it. Neither does it weaken the force of this implication, that the daughter would have taken as heir. The testator took the disposition of his estate into his own hands, and meant to leave nothing to the law, but to dispose of the whole himself. The half of the estate being previously given to the wife during her natural life, the testator adds, “ in case my wife should die without any more issue, my will and desire is that the whole of my estate revert to my daughter Lucy.” Now, he had given his wife but half and it is most evident, that this limitation was meant to operate upon that half only; yet he says, if his wife die without more issue, the whole shall pass to Lucy. How can we make sense of this, but on the ground, that the testator, supposing the one half already in Lucy, considered that the half given to his wife, when it should pass to Lucy, would vest, the whole in her. The will proceeds, “ and should my daughter Lucy die without issue, for the whole of my estate to revert, to my wife Susanna; and in case they both die without issue, then he.” I consider this a clear estate tail in Lucy. The case of Walter v. Drew, seems to me stronger than this. Richard Weeks, having two sons, William, his elder and Richard his younger, devised as follows: “ It is my will, that if William Weeks, my son, shall happen to die and leave no issue of his body lawfully begotten, that then, in that case and not otherwise, after the death of the said William, my son, 1 give and bequeath all my lands *393 of inheritance in L. unto the said Richard, my sou, to have and to hold the same, after the death of the said William, to him and his heirs.” This case was much canvassed before baron Price, and many authorities cited, among others, Gardner v. Sheldon. The question was, whether the heir at law took an estate tail by implication, and Richard a remainder, or whether the heir took a fee by descent, and Richard by way of executory devise? After time for consideration, the judge gave his opinion, “ that William took an estate tail by this will; for the words shall not be construed to give an estate by way of executory devise, but where the devisee cannot take any other way; but here William took by the will, for it is a necessary implication, that be shall have it to him and the heirs of bis body; for the heir shall take by the will, though be is not expressly named, or there be no devise to him by express words.”
I am of opinion, then, that Lucy took by devise, and that the estate taken was a fee tail, tho limitation over being on her death without issue. And I have do doubt, that though Lucy bad taken by descent, the result would have been the same: this is a point, however, which I have not well examined. The view taken of it by my brother Green, seems clear and sound; and to that 1 refer, as also particularly, to his strong and satisfactory remarks and authorities, in support of the law, so often sanctioned by this court, under which the devise to Lucy has been held to be an estate tail. But there is one point in this cause, in which I must differ from him: 1 mean as to the estate which the mother took in the land devised to her.
I think that she also took an estate tail, enlarged into a fee by the statute abolishing entails. I cannot agree to tho reading which connects the last clause in the will with the devise of the laud to tho wife, and makes the words “ if she should die without any more issue,” refer exclusively to tho personal estate that came by her, so as to prevent their enlarging the express estate for life given her in the land, into an estate tail. 1 do not believe the testator ever dreamed *394 of such connection. It is clear to me, that he held his wife and child in equal scales, and meant to divide his estate between them. The whole face of the will convinces me of this. Immediately after the devise to her of his land and half of his estate, and indeed forming a part of that devise, follows the limitation, “ if she die without more issue, then to my daughter shewing that it was not till failure of that. issue, that the daughter would take, and that until such failure, that issue would itself take: this constitutes an estate tail. Observe the exact equality in these devises, between the wife and daughter: if my wife die without more issue, then the whole of my estate to my daughter; if my daughter die without issue, then the whole to my wife; and if they both die without issue then over. I cannot make a distinction between these devises, and say that the mother took but an estate for life, and the daughter a fee tail enlarged into a fee. I think the same words, and the same reasoning, and the same settled law, carry an estate tail to both, in the half given to them; and consequently, that the appellants are entitled to that portion given to the wife, her estate in it being enlarged into a fee.
Green, J.
The appellants’ counsel was right in saying, that the construction should be made upon the whole of the will in question, and all the provisions made in favour of the testator’s wife brought together. And then the will, with all its provisions taken in their natural order, would read thus: “ I leave my wife one half of the tract of land whereon I now live including the buildings, also one half of my estate, during her natural life: In case my wife should marry and again have issue, I wish her to have the disposal of the whole of the property that came by her: In case my wife should die without any more issue, my will and desire is, that my whole estate to revert to my daughter L: And should my daughter L. die without issue, for the whole of my estate to revert to my wife S : And in case they both should die without issue, then for that part that came by *395 my wife S. to revert back to her brothers and sisters that may be then living, and for the balance of my estate to revert to my brother J. D. and his heirs, if any, if none to be equally divided between my two half brothers.” 1 think too with him, that the devise to the wife of all the property which came by her, in case she should marry and again have issue, taken by itself, would have the effect of giving her an absolute estate in that property, if she should marry and again have issue, even if that issue died in her life-time, the hour after its birth; and this upon the plainly-expressed intention of the testator. But I do not think, that the inference he insists on is just; namely, that the testator, having given her that property upon that condition, did not. intend that it should go over to his daughter, unless that condition failed, and that, the daughter and,wife being equal objects of his bounty, (as is inferred from the provisions of the will) neither did he intend, that the property given to or devolving on the former, should, if she had any issue, go over to the latter, or that any of the property should go over to his and his wife’s relations, if his daughter had any issue, or his wife any more issue, at any time; and that, therefore, the words “ having had” should be interpolated before the word issue, wherever it occurs. In every instance, in which the expression “ die without issue” occurs, it is used indefinitely : and the words “ without any more issue” applied to the wife, have the same effect as “ die without issue” applied to the daughter; “anymore” referring to the future issue of the wife, since she could not die without issue generally, as long as the daughter or any of her issue existed. Accordingly, those words are dropped in the ultimate limitation, where that discrimination was neither necessary nor proper, as the event upon which that was to take effect, was the death of both without issue.
This then presents no more than the common case, of a devise in fee or for life, or without the designation of any estate, with a limitation over upon the failure of the issue of the first taker. Whether, in this case, that was to be, after *396 an indefinite failure of issue, or otherwise, is a different ques« tion, depending upon other provisions of the will, to be hereafter examined: these are the conditional limitation over to the brothers and sisters of the wife living at the death of tire survivor of the wife and daughter, and to the half brothers of the testator, without words of perpetuity.
Whatever may be the effect of these provisions,, it is clear, from the limitation over to the wife upon the death of the daughter without issue, and to the daughter upon the death of the wife without any more issue, that the testator intended, that the daughter should take such an estate in the property given her by the will, or devolving upon her by law, and the wife such an estate in a part or the whole of the property given to her, for life in the first instance, or in absolute property upon a condition, as would be transmissible to their respective issues. And there is nothing in those ultimate provisions of the will, before alluded to, which can possibly controul this intention, and reduce the daughter’s interest to a life estate only, or the wife’s in that part of the property, which was intended to be transmissible to her issue other than Lucy. These transmissible interests were, of necessity, estates in fee simple or estates tail, as the law was before the 7th October 1776.
As to the property, which came by the wife, and which was given to her upon a condition which has been performed, that being personal, it is unnecessary to make any further inquiry, as a devise which will give a fee tail in real, gives an absolute property in personal, estate. The only question is, whether the life estate given to her in a moiety of the testator’s land, and the residue of his personal property, was enlarged into an estate tail by the limitation over upon her dying without any more issue. And that depends upon the question, whether that limitation related to the property so given to her for life, in which case it might have that effect, or only to the property which she had a contingent right to take absolutely?
*397 Much of the difficulty in the construction of this will, J . arises from the circumstance, that the testator, having in his mind two classes of his property, that which came by his wife and that which was of his own acquisition, and intending to dispose of these alike in some events, and differently in others, has confounded them together, and in terms made the same dispositions as to both. But, in respect to this subject also, by reading the will altogether, and giving effect to all its provisions, without allowing one to contradict or contrail another, unless it be unavoidable, we shall be enabled to solve the difficulties. With a view, then, to these two descriptions of property, the provisions of the will may be arranged and paraphrased thus: “ I give to my wife, in all events, during her natural life, one half of my estate which came by her; and if she marry and again have issue, 1 wish her to have the disposal of the whole of it; and if she die without any more issue, the whole of it is to revert to my daughter; and if both my wife and daughter die without issue, it is to revert to my wife’s brothers and sisters then living. I also give to my wife, during her natural life, half of the residue of my estate; and if my daughter die without issue, the whole of my estate, including that which came by my wife, is to revert to her, whether she marry and again have issue or not; and if both die without issue, that part of my estate which did not come by my wife, is to revert to my brother J. D. and his heirs, if any; if none, to my two half brothers.” Thus, reddendo singula singulis, all the provisions of the will are rendered consistent. The expression die without any more issue finds a fit subject to operate upon, without any necessity to enlarge or affect the estate expressly given for life ; which ought not to he done by any implication, unless it be such as is necessary. Indeed, a little more than one hundred years since, it was held, that no estate expressly given could be enlarged by any implication. Bamfield v. Popham, 1 P. Wms. 54. (1702). Idle v. Cook, Id. 78. (1705). Tomlinson v. Dighton, Id. 154. (1711). Humberston v. Hum *398 berston, Id. 333. (1716). This, however, was soon exploded, as a general and inflexible rule, in Blackborn v. Edgley, Id. 605. (1719), although it was in that case, as it has ever since been admitted, that it only yielded to a necessary implication, and where the words die without issue, would otherwise have no operation. And, in that case, there was no such necessary implication. But, in Langley v. Baldwin, decided in 1707 (cited in the Attorney General v. Sutton, Id. 759.) and in the last mentioned case, decided in 1737, the implication was thought necessary, because otherwise some of the issue of the person to whom the life estate was given in terms, might be excluded. And in Robinson v. Robinson, 1 Burr. 38. 2 Ves. 225. (1750, 1758), such a necessary implication arose from the same cause. There would be the like necessity here, if all that part of the estate of the testator given to his wife, had been given only for her life; in which case the expression, “ dying without any more issue, then the whole of my estate to revert to my daughter,” must have applied to all given to the wife for life, without discrimination, and the intention would have been thus manifested, that all so given to her should go to her issue other than Lucy, if she left any such. But, as there was a part given to her absolutely, upon the contingency of her having more issue, there is no such necessity; and the expression “ the whole of my estate to revert to my daughter,” applies, naturally and emphatically, to that part of the estate, and in respect to that only was there any occasion to provide for its returning to the daughter, upon the wife’s dying without any more issue. The rest given only for her life, would have returned of course, without any such provision. This is, I think, the only true construction of that part of the will; and the wife’s estate expressly given for life, was not enlarged into an estate tail, according to the law as it was before the 7th October 1776. That part of the estate devolved on the daughter, in the same way as did the residue of the estate not given to the wife in any form. And the question is, *399 whether she took a feo simple by descent or a fee tail by the will.
It is perfectly clear, that if the testator had given that part of the estate to his daughter and her heirs, and if she died without issue, to his wife, and if his wife died, without issue, then over; the daughter would have taken an estate tail, with remainder in tail to the wife. But, it was argued, that an estate in fee descending upon the daughter, and she taking nothing by the will, that estate cannot be restrained to a feo tail by implication; and the case of Gardner v. Sheldon, decided in 1671, was cited as establishing that proposition. There, the deviso in effect was, “if my son George (the heir at law) and my daughters M. and C. die without issue, then all rny lands shall remain to my nephew W. George entered, and died seised, leaving two daughters, his heirs; M. died; and C. brought ejectment against the daughters of the son. Vaughn, C. J. and two others held against Terryle, that neither the daughters nor the son took any thing by the will, but the estate descended upon the son in fee, upon the ground, that an heir could not be disinherited by any but a necessary implication. And to obviate the objection to that construction, that the testator manifestly intended that his nephew should succeed to the estate, upon the failure of the issue of the son and daughters, an intention which would be frustrated, unless the son and daughters were held to take estates tail under the will, because a fee could not he limited after a fee; they determined, that the limitation to the nephew after the indefinite failure of issue of the sons and daughters, was good as an executory devise; and cited for that, Pells v. Brown, and the cases there cited: a proposition which I cannot ascertain to have been ever asserted in Westminster hall, either before or since. This case, however, is not like that of a limitation over upon the failure of the issue of the heir only, as in the case before us; for construing that to give a fee tail to the heir by implication, does not disinherit him, as would have been the effect in Gardner v. Sheldon, if it had bren held there that the *400 daughters and the son had a joint estate tail, or a joint estate for their lives, with remainder in tail. And that case is entitled to the less weight, because the decision was founded, in part, upon a legal proposition unquestionably erroneous. Upon principle and reason, I can see no greater objection to reducing an estate in fee by descent to a fee tail by implication, than to do so in respect to an estate explicitly given: indeed, there would seem to be a greater difficulty in so doing in the latter case, against the expressed will of the testator, than in the former, where there is no such expressed intention. Accordingly, whenever the naked case under consideration has occurred, the estate in fee which would otherwise have descended to the heir, has been restrained to an estate tail, and he has been held to take under the will. Thus, in Newtons v. Barnardines, Mo. 127. (27 Eliz.) A. having three sons, T. R. and G. devised twenty nobles to the child of T. (he being dead, and his wife enseint) for twenty years; and if my son R. die before he hath any issue, so that my land descend to G. before he comes to twenty-one, my executors shall occupy it till he comes to that age, then &c.” held that R. by implication of the will, had an estate in tail, as well by the words “ if he die before he hath issue,” as if it had been if he die without issue, they being tantamount.
Cozen’s case, Owen, 29. (which seems to be the same as the foregoing); Devise, “ if it shall please God to take my son R. before he hath issue of his body, so that my land descend to C. his brother, then he.” All the justices agreed, that this was plain to make an estate tail.in R. by implication.
Counden v. Clarke, Hob. 29. Mo. 860. (10 Jac. 1.); Devise, “ Touching my land which of right will, and (my intent and meaning is) shall, descend and come to my son J. C. (his heir), after my decease, this is my devise and then the will appointed certain friends to take the profits, until his son attained the age of twenty-four, accounting therefor to hjm; and added, “Provided always, that if my son J. shall happen to decease without■ issue of his body *401 lawfully begotten, that then I will, shall go unto my right heirs males, and posterity of me and my name forever, equally to be divided amongst themHeld, that “ dedaring that the land should descend to his son, is just the same that the law speaks; it is utterly void and idle; and then, the rest of the devise must proceed, as if that had not been spoken at allthat the limitation to his right heirs &e. was void, or if not void, it was a devise to the son himself, who was right heir male : and that he took in tail by the will, and the reversion by descent.
Walter v. Drew, Com. 372. (1723). A. having two sons, W. the eldest, and R., devised, that if W. should die without issue, R. should have all his lands in fee: held by baron Price, that W. took a fee tail under the will.
Goodright v. Goodridge, Willes, 369. (1742); Devise to testator’s wife for life, “ and my will is, that if my son R. do happen to die without heirs, then my son J. shall enjoy my landsheld, an estate tail by implication to R. the eldest son, with remainder to J. the youngest, they being brothers of the whole blood, and therefore heirs meant issue.
In the case of Newton v. Barnardine, the question arose between the posthumous daughter of the eldest son and the testator’s second son R. And the heir was disinherited by an implication arising from the limitation over upon the failure of the issue of R. probably strengthened (though it is not noticed in the report) by the pecuniary bequest to the expected child of the eldest son. And in Counden v. Clarke, the construction was made upon the intent of the testator (implied from the words, “ decease without issue of his body”) to provide for that issue, without deriving any aid from a necessity by that construction to give effect to the limitation over, since the son himself would have had the fee, whether the construction were one way or the other, and whether the limitation were valid or void. Indeed, it has been a settled role for ages, that the effect of every limitation over, upon the indefinite failure of the issue of the first, taker, whether he took by the will or deed, or by de *402 scent, was to convert an estate which would otherwise have been a fee into a fee tail, and even although the limitation over was to the right heirs of the donor, and therefore void. Of this, the cases of Nottingham v. Jennings, (1700). 1 Ld. Raym. 568. and Lee v. Brace, (1696). Id. 101. and 3 Salk. 337. (the first in case of a devise, the last of a feoffment) are striking examples.
But, suppose it to be doubtful, whether the daughter’s estate was in this case a fee tail or fee simple, or capable of being considered as one or the other, indifferently. Then the question would arise, whether it ought to be construed as a fee, and so the limitation over incapable of being barred or destroyed by any means ? or as a fee tail, and the limitation over a remainder destroyed ipso facto by our statute, and capable of being destroyed, at the pleasure of the tenant in tail, by docking the estate tail, as the law was before the act of 1776? This question is answered by the rule laid down in Purefoy v. Rogers, (1671). 2 Saund. 380. as there fully established, and never since departed from, that “ when a contingency is limited upon an estate of freehold, capable of supporting a remainder, it shall never be construed to be an executory devise, but a contingent remainder only.” Such are the words in which the rule is laid down, in reference to the particular circumstances of that case: but its principle, and the reason on which it is founded, make it in truth much more general and comprehensive, and in effect this, that “ no limitation shall be construed as an executory devise, if it may be construed to be a remainder,” (as it was expressed by Lord Hardwicke in Wealthy v. Bosville, Rep. K. B. Temp. Hardw. 258. Butler’s Fearne, 387. in which that rule was assigned as one of the reasons for restraining an express estate in fee to a fee tail, by force of the limitation over)or, that “ no. words shall be construed to give an estate by way of executory devise, but when the devisee cannot take any other way,” (as laid down by baron Price, in Walter v. Brew, and assigned as one reason for holding, that an estate in fee descending was restrained to an estate tail, by the force of the limitation over).
*403 This rule was founded in the best reasons. Before the introduction of executory devises, (which are comparatively of modern date), every limitation over was void, unless it could be construed to operate as a remainder, either vested or contingent. The court, therefore, in order to give effect to the intention of the donor, laboured to give such a construction, as would in that way make the limitation over valid: and this is one of the reasons given in some of the early cases, for reducing an express estate in fee to an estate tail by force of the subsequent limitation. And the only ground, on which executory devises were originally admitted, was “ an indulgence to a man’s last will and testament, when otherwise the words of the will would be void,” and the devisee could not take any other way. Reeve v. Long, 4 Mod. 259. They were, however, admitted with great reluctance, since they established perpetuities to the extent within which they were allowed to be valid, as they were incapable of being defeated in any way, contrary to the former principles of the common law, according to which no future or contingent interests could be limited with effect, otherwise than in the form of remainders, which if depending upon a precedent estate tail, could be barred at the will of the tenant in tail, or if upon an estate for life and the remainder was contingent, by the destruction of the precedent estates by any means, as by forfeiture, merger, surrender, or the feoffment of the tenant for life, before the contingency happened. It was not, therefore, to be expected, that the courts should have abandoned the settled construction, by which limitations might take effect as remainders before the introduction of executory devises, for the purpose of allowing them afterwards to operate by way (if executory devises.
This principle of construction, with all others touching the creation of estates tail, were left untouched and unaffected by our statute of 1776 docking entails, and are prescribed to the courts of justice for their guidance, by our subsequent legislation. This is the literal effect of our statutes, and re *404 peatedly decided to be theft true construction, and I think rightly. The purpose of the act of 1776 was to unfetter estates, upon principles of public policy. The means adopted for effecting this object, was, to do by the statute, in respect to all entails, then existing or afterwards to be made, that and no more than that, which every tenant in tail could do at his pleasure; dock the entail, and thereby bar all remainders and the reversion. It would have been wholly inconsistent with this purpose, to have introduced new fetters, by allowing limitations, before operating as remainders, and so liable to be barred by the act of the tenant in tail, to take the new form of executory devises, not capable of being barred in that way, and not barred by the statute; and to apply the same rule to all limitations of estates afterwards made, as was applied to those already existing, was perfectly consistent with and prescribed by the policy of the statute, that of unfettering estates, by destroying all contingent limitations afterwards made, which might have been destroyed by the tenant in possession, if that act had not been passed. The act of 1819, in respect to contingent limitations, in its very terms, declares a change of policy in this respect, and cannot be considered as declaratory of the former laws, or as influehcing their construction.
But supposing the daughter’s estate to have been a fee simple; then the question would still remain, whether the limitation over to the wife, upon the daughter’s dying without issue, is good as an executory devise ? and it is insisted, that the ultimate limitation over of the property, which came by the wife, in case of the death of the wife and daughter without issue, to the brothers and sisters of the wife then living, is good, and controuls all the other limitations, as well those between the wife and daughter, as that to the testator’s brothers; that the limitation over to the testator’s half brothers, without words of perpetuity, has the same effect; and that the testator did not intend, that if his daughter died without issue, his wife should take under that limitation, or that, if his wife should die without any more issue, *405 his daughter should take under that limitation, or that, if his wife and daughter should both die without issue, his brothers should take under the limitation to them, unless, in each of those cases, some one or more of the wife’s brothers and sisters was alive when the issue failed. This construction must he maintained, in order to make the limitation over to the wife good as an executory devise. For the rule on that subject requires, not only that the testator contemplated the possibility that the limitation over might take effect within the period allowed by law, but it must appear to be his will, that unless it takes effect within that period it shall not take effect at all. It is impossible to look at this will, and suppose that the testator intended, that the contingent interests given to others, should depend upon the circumstance, whether one or more of his wife’s brothers or sisters was alive when the contingency happened, as they might all die in the life-time of the wife and daughter. And so the counsel of the defendant thought; for it is not alleged, that any of the brothers or sisters of the testator’s wife, were living at the time of his daughter’s death. But, even if that could be supposed, in respect to the property which came by the wife, it would not apply to that given ultimately to the testator’s brothers: As to that the limitation over was clearly after an indefinite failure of issue: for they took estates in fee, not only by force of the preamble of the will, hut of our act of assembly dispensing with words of perpetuity in the creation of estates in fee, the effect of which, in cases like this, 1 have already considered in another case. Bells v. Gillespie, 5 Rand. 286.
Coalter, J.
it seems to me, that the intention of the testator was this: In the first place, until his daughter came of age, if neither she nor her mother married before that time (unless the mother before that desired a division), that the estate should be kept together for their mutual benefit : but that, so soon as the daughter came of age, or if before that time she married, or if before that time the mo *406 ther married or wished a division, then the mother should have one half of the whole estate during her life. The consequence of such division would necessarily have been, that, as the estate was no longer kept together for mutual benefit, the other half would go to the daughter, immediately, in possession; and she would also be entitled, in fee, to the other moiety on the death of the mother. Had nothing more been said, and had they both lived unmarried until the daughter came of age, no division being called for by the mother, the estate must then have been divided, and the daughter (it seems to me) would have taken, by descent, and distribution, one moiety in fee and absolute right, in possession, and the other moiety in reversion; and the mother her moiety for life. I say, had this been the whole will, the estate, subject to the wife’s life-interest in one moiety, would have gone to the daughter, under the statutes of descent and distribution: whether the descent has been brokeip by the after clauses, may be another question.
But the testator had looked to the future marriage of his wife, and also to the event that there might be issue of that marriage. He had certain property (slaves, I presume), which he held in right of his wife; and his intention was, in case she married and had issue by that marriage, that she should have the disposal of this portion of the estate. Her marriage alone was not to give her this right; she must again have issue; and then the question is, whether such issue must be alive at her death, in order to vest that property in her, so as to give her the disposal of it? The plain meaning of that part of the will, I think, is to give her the absolute disposal of that property, upon her marriage and having issue, without any view to the death of that issue before her or otherwise. In those events, that property would pass to her absolutely; in which case, although she might die afterwards, leaving no such issue behind her, the other clauses in relation to that portion of his estate, would not operate upon it: they would merely operate, in case she should die without having had such issue. For this evept. *407 and in relation to this part of his estate, he provides in a two-fold way: first, “incase my wife should die without any more issue, (that is to say, without having had any more issue), my will and desire is, that the whole of my estate is to revert to my daughter Lucy.” He doubtless calculated, that, if a division was made, this property would form a portion of his wife’s share, as it was to be absolutely her’s, in the event so looked to. She would feel a greater interest in it than in his other property; hut if that event did not happen, this property is to revert. That is his meaning by the expression, “the whole is to revert.” He had carved out this portion, which might thus go intirely from his daughter; hut if it does not, then it is to revert to her. Thus, the use of this word may perhaps have some hearing on the construction 1 have above given; though, I think, the intention plain enough without it. Generally, when that word is used it means simply, “go to.”
Secondly, he looked to the event, not only that his wife might die without having had more issue, hut that his daughter might, also die without issue ; and then he intended this part of his estate to go to the brothers and sisters of his wife, that might then be living. The words of the will are, “ and should my daughter .Lucy die without issue, for the whole of my estate to revert to my wife Susanna ; and in case they both shall die without issue, then for that part that came by my wife, to revert back to her brothers and sisters that may then be living'.” We are now considering what he intended, as to this portion of his estate that came by his wife. “ Brothers and sisters livingwhen living ? When his wife should die without having had more issue, and his daughter should also die without issue, and should so die during the life of the wife, or of some one or more of her brothers and sisters, who, surviving these events, were to take the property.
But it cannot go over, until the mother is dead without having had more issue, and the daughter is also dead without issue. Does this, as to the daughter, mean dead without *408 having had issue ? I think not. Does it mean, that, though she may die leaving issue alive, yet as that issue may ultimately possibly in the life of the mother, and if not, possibly in the life of her brothers and sisters, possibly not untjj jong after ij1G ¿0^ 0f them all, in either of which cases, however, it is to go over? To whom is it to go over? First, to the mother: but it could only go over to the mother, in case she survived the daughter dying without issue, and had had no more issue herself; for if she had had such issue, it never would have gone to the daughter, so as to come from her to the mother. But on the death of the daughter without issue, it is to go to the mother first, if she be in esse. The testator, then, as to this portion of his estate, looked to the mother’s surviving the daughter who should be dead without issue, and taking it subject to be absolutely her’s, should she have more issue, and if not, that she should have it for her life. He could not calculate on the mother taking it in tail, so that her issue, surviving the . issue of the daughter, might, in the long course of time, take it: for the very fact of her having issue born, even after the death of the daughter, leaving issue, would cut out the issue of the daughter, and put an end to all questions. As to this portion of the estate, he did not intend to provide for the issue of the mother by a future marriage: he intended the mother, on that event, to take it absolutely, as her dowry, as if it never had ceased to be her property. A dying then, without issue in the life of the mother, and at most within the life of some brother or sister of the mother, was clearly intended as to this part of the estate. If the mother was alive on this event, and died afterwards without having had more issue, then it was to go to the survivors of the brothers and sisters.
This too must be ascertained at the death of the mother; for she could not have more issue after her death. But she may be dead without having had more issue, before the death of her daughter, and she may then die without issue: Without issue, when ? In the long course of time, when that *409 issue, after her death, may become extinct? Is this property, then, to go over to surviving brothers and sisters? when too, other events looked to, tied it down to the death of the daughter without issue during the life of the mother! And this as to a personal subject, which could not be so limited on an indefinite failure of issue! Surely, it seems to me, this would not he a sound construction of the will, as to this part of the estate.
Had the mother died without having had more issue, and had the daughter died without ever having had issue, and that in the life-time of the mother, could it be said, that this limitation over of this portion of the estate was void, as being limited on an event too remote ? On an indefinite failure! of issue ? It seems to me not.
Suppose the mother to have married, and to have had more issue, this part of the estate, in that event, if in possession, would have become absolute in her, and would have belonged to her husband. The daughter, though she might have survived her mother, and died leaving issue, and though the issue of the mother by the after marriage had also died before that time, would have had no interest in this portion of the estate. Nor would the issue of the mother, if alive at her death, take it under the will. It would be the property of the husband, if in possession, or go to him, if he survived, as his wife’s administrator. Nor would it go to the brothers and sisters of the wife, although her daughter Lmcy liad died in her life, without having had issue, and the issue by the second marriage bad also been dead at the death of the mother. But it might and would have gone over, had she never had, such issue, and any brother or sister had survived her to take it.
Now, though it has happened, that the testator’s daughter .Lucy died soon after him, without having had issue, and though the mother again intermarried with the appellant Jiggetts, and is now alive, having had issue by him, so that no question remains as to this part of the estate; yet, as the provisions and limitations as to it, had these events not hap *410 pened, are connected with the provisions and limitations in relation to the residue of the estate, which was to go over on the same events (as it seems to me,) I have thought it expedient thus to inquire, whether this would have been a good executory limitation over, of this portion of the estate,, in the events that might have happened.
John Davis, the testator’s brother and devisee, mentioned in the will, is constituted one of the executors thereof, and qualified as such. It is said, in the answer, that the debts exhausted the personal estate, except that part of it which came by the wife. John Davis brings this suit for the real estate only. He says, and it is admitted in the answer, that his half brothers died infants, intestate and without issue: that he is their heir at law; that the testator’s daughter Lucy also died an infant, intestate and without having had issue, before the marriage of her mother to the appellant Jiggetts ; and that he is her only paternal uncle, and heir at law. He claims the estate by descent from her, one moiety to be decreed to him presently, and a declaration of his right to. the other moiety on the death of Mrs. Jiggetts.
The defendants insist, that, on the death of Lucy, the daughter, without issue, the whole estate was to go by the will to her mother in fee.
It seems to me, that, as to the residue of the estate, the precise events which the testator looked to, and on which the estate was to go to his wife, have happened. It was quite natural and reasonable that he should have looked to the possible, if not probable, event of the death of his infant daughter without leaving issue; in which event, if her mother survived her, he wished her to take the estate; and if she died also without leaving issue by an after marriage, that it should go over to his own family, the estate being of his own acquisition. Should his wife die before his daughter, without more issue, the whole estate would of course belong to his daughter; but she might die afterwards without leaving issue, in which case he wished that portion of it acquired by her, to go to her brothers. If the mother had *411 other issue at her death, and the daughter died leaving issue also, the estate which came by the mother, being thus absolute in her, would go as her property, to whoever might be entitled to it. If, at the death of his daughter without leaving issue (in which case, she could not have disposed of her estate), his wife had been also dead, but had left issue, the estate would not have gone to that issue by the will, nor would it have gone to the uncles under the will; for the .events, on which it was to pass, either to his wife or his brothers, had not taken place. Suppose that situation of affairs had been suggested to the testator, and he had been asked, “ do you wish the estate, in this case, to go out of your family to the children of your wife by a second marriage ?” Is it not reasonable to suppose, he would have answered, “ should my wife survive my daughter, as I have the greatest affection for her, next to that I feel for my child, I wish her to have all, if my daughter leaves no issue : but if I cannot benefit her, l surely can have no such feeling for her children, or her husband, that would induce me, in this event, to prefer them to my own blood : I therefore mean, that she is to survive the death of my daughter, without leaving issue, so as on that 'event, to take a personal benefit from me : if it does not so happen, I leave the law to dispose of it.” Suppose all this had been explicitly stated in the will, what objection could there be to it? But if we can collect this to have been his real intention, and these to have been the events plainly and naturally looked to, why shall we impute to the testator an intention to intermeddle with the abstruse doctrine of implied estates tail, which we have to study anew, as every case arises ? Why shall we suppose, that he was looking to events, which might not happen for an hundred years; and that he was seeking to create perpetuities in his family, of which ho certainly never dreamt? To consider him as doing this, is to suppose he thought he had the power to create an estate tail; and was ignorant of the law, which would in fact obliterate and change his whole will the moment he made it, in case he did so; would make *412 it read, either as giving his whole estate, at once, in fee, to his daughter, which, consequently, in no event, could go to his wife, or to any one else ultimately in his view; or would give one half of his own acquired estate to his wife in fee, on his death, and possibly also the whole of the property which came by her, and to his daughter only the other half of his own acquisition, so as in fact to give her a less share than her mother! This will was made in 1813, so long since the act for destroying entails, that the testator may not have been born under that system of laws: could he have been ignorant of the existing system ? If he was not, he could only have created estates tail by his will, through sheer mistake, or slip of the pen : he could not have intended it: and if there be circumstances in the will, to satisfy us that lie intended what I have supposed, we ought not, if we can avoid it, to violate this intention. As to our duty in this respect, I have expressed my opinion pretty fully in the case of Bells v. Gillespie.
The mother has survived the daughter, who died without ever having had issue. Since that, the mother has again married; and has a family of children. On this death of the daughter, the whole estate went to her mother, at least during her life. Her taking husband, and having issue, has given her the estate that came by her, in absolute right, and it now belongs to her husband. The other estate will be absolutely her’s too, if she leave issue at her death ; if not, it will either pass, under the will, by way of executory devise, the event on which it is to pass or not, being to happen at that time, or it will descend to the testator’s heirs at law. We have nothing to do with that question, at present.
But let us further inquire, whether we are bound to imply estates tail in this case: First, as to the wife.
The first clause gives to the wife, a life estate, expressly, in one moiety of the testator’s estate. The next provides thus: in case my wife should die without any more issue, the whole to revert to my daughter: and should my daughter die without issue, the whole .of my estate to revert t© *413 my wife : and, in case they both should die without issue, iln.n that part that came by my wife to revert back to her brothers and sisters then living, and for the balance of my estate to revert to my brother John Davis and his heirs, if any; if none, to be equally divided between my half brothers.
“ In case my wife should die without any more issue &c.” The issue supposed to be here intended to be provided for by the will, is her issue by a future husband. The estate for life in the wife is then to be raised into a fee tail, that her issue b hy another husband may take one moiety of the estate, as her heirs in tail, so as to defeat, quoad that moiety, his own daughter and her issue, although she and they may endure for generations, at the same time, that his wife, by having this very issue, gets back absolutely the éstate which came by her; and thus, she and her issue are to take a much larger portion of his whole estate, than his own child and her issue ! This is on the supposition, that the testator supposed he could make an estate tail, and thus provide for the future issue of his wife by another husband, and intended to provide, in this way, for such issue. Is it possible to suppose he ever dreamed of such a tiling ? It would be just as reasonable to suppose, that he intended that which, under the act of 1776, would he the effect of such a disposition, to give to his wife, at once, a foe in a moiety of his estate, which she might sell the next day after his death, and thus disinherit his child.
But that clause of the will, as I have before shewn, had no other object but to bring back to his daughter, that portion of the estate, which might become the absolute property of the wife, in a certain event: this is manifest, if we suppose he had that disposition of the estate that came by his wife, then in his mind. And though, when that part of the will now under consideration was written, he had not put into writing the clause which was thus to give that portion of his estate absolutely to his wife, yet the words “ more issue” shew, that he was looking to that very event, which *414 was to give it absolutely to her, and that he was providing,. a for what was to be done, if that event did not happen; as he also provided for it, in the other clause, which, in certain events, gives that portion of his estate to his wife’s brothers and sisters; which clause was also penned before he made the provision, giving it absolutely to his wife on her having more issue. That disposition was as much in his mind and will, when those clauses were written, as if it had actually been reduced to writing before them, as part of his testament. And it is therefore perfectly fair to read it as the first written. • These clauses never contemplated creating an estate of any kind in the wife: they were designed to dispose of the property which came by her, and that only. As to the other property, any interest she was to take in it, depended on the first clause giving a moiety for life, and on the clause giving her the whole of the estate on the death of the daughter without issue, which she was to take absolutely.
Next, did he intend by that clause, to create an estate tail in the whole property in his daughter.
He certainly did not intend to create an estate tail in his daughter, in that portion of his property which came by his wife, as I have before shewn. He had taken it from her already,' and given it absolutely to his wife, on an event that has happened. As to it, then, he did not mean to provide for the issue of his daughter out of it.
He had not thought it necessary to give to this, his only child, any tiring, not even a life estate in a moiety nothing but a support until a division, which might have been called for the day after his death. Why ? Because, -with the interruption of the life estate of his wife in a moiety, the whole would go to her and her heirs: and, had he not looked to her possible death, (she being an infant probably of tender years), without children, in which case he intended to provide more amply for his wife, and should she die also without issue, to discriminate between his brothers, the will would have gone no farther than to give the life estate to the *415 wife, and to make the provisions which ho did make, as to the estate that came by her. Suppose he had, in no event, ini ended any thing more for his wife, and had intended to give no preference to his brother John Davis, the clause, under which this question arises, would have been unnecessary, to effect any thing else in the mind of the testator, and never would have been found in his will. He would simply have permitted the estate to go by descent to his daughter, and afterwards in due course of descents, should she not attain her age so as to dispose of it, or never have issue to take it from her. He did not mean, by this clause, to give to his daughter a less estate, than that fee which he knew would descend to her.
But, it is said, he intended to provide for her issue, by this clause, so as to perpetuate the estate in them as heirs in tail.
I have already shewn, that he did not intend this, as to one portion of the estate, although included by the word whole ; and I cannot think, that he was so intirely ignorant of his want of power to do this, or of the fact that the consequences of an attempt to do so, would have been a felo de se of every other intention expressed in his will, in relation to the other part of his estate, as that he could have intended any such thing as to it. Had the idea crossed his mind, that, if his daughter should live to mature years, marry, and have a family, she was not to take an absolute estate as his heir, he would probably have shewn this in the usual way in which unlearned testators do, by giving her only a life estate. That would have been his intention: he would have intended her to enjoy it, at least during her life, and that it should then go to her issue. But such an idea never presented itself. He looked to her death without issue in the life-time of her mother, and intended to provide for that event. And he also looked to the death of that mother without more issue ; and as his whole estate, as well that acquired by him, as that which came by his wife, would thus have cratered in the mother, he intended the *416 one ^ go to her brothers and sisters, and the other to his own brothers. He never looked to these ulterior provisions taking effect after a long lapse of time, when the issue of his daughter might become extinct. I think, taking ap tjle provjsions 0f the will together, he has plainly enough tied it down to a definite failure of issue, so as to enable us to give effect to his real intentions.
He did not intend by this clause (as I have before said) to create any estate in his daughter; but merely to provide for such an event as has happened. It seems to me, therefore, to be a stronger case than the case of Pells v. Brown. We have seen, that the same words were not intended to give an estate tail to the wife, and why should they have a different meaning when applied to the daughter ?
The circumstance that the wife’s brothers and sisters might all be dead before the wife and daughter, is nothing more than what often happens, that the person or persons intended to be benefited, have died before the happening of the event on which the benefit was to accrue : it does not shew, that the event looked to was one not expected to happen in time to give a personal bounty to the party. How numerous they were, and the probability of their surviving is not known. They may now be alive; but, having no connexion with, or interest in, the matter in hand, no mention is made of them.
But if there be any thing strange in the supposition, that the testator looked to their being alive, or some of them being alive, at the death of both the wife and child; I think it is not so strange, as to suppose, he really did intend to create an estate tail. If we can see, from the whole will, that he did not intend it, we cannot (it seems to me) with any reason say that he did it by accident.
Where from the whole will, it is probable, that he intended to tie it down to a dying without issue, living his wife, surely the change in our system ought to turn the scale in favour of the intention. In England, in relation to real estates, if the matter was doubtful, as the issue could *417 fiius be provided for, perhaps the courts would permit the power to do so to incline the scales that way : but even if that were so there, are we to be so hampered, as that, in a ' í ,, doubtful case here, the change in our situation, the absence of this power, may not turn the scale the other way ? Are we to be told, that some speculator has purchased an estate, hanging thus in doubt and equal balance, and that the rules of property will be invaded if the scales are not to be turned by a circumstance, which, in England, would turn them in his favour, but w'hich here ought to belong to the other scale? Let him forbear his speculation, until he who offers to sell, and who is a volunteer, has ascertained his rights. Surely, if the case would be a doubtful one, under the whole will, according to english decisions, (and I think we are entitled here, to the benefit of the most liberal english decision) we ought not to doubt here.
This testator undoubtedly intended a benefit to his wife. But it may be well doubted, whether, taking all his will together, he intended, by this clause, to provide for the issue of his daughter, and to prevent her, if she had such issue at her death, from disposing of this estate as she pleased. If this intention is doubtful, why shall we presume it existed, in order to defeat intirely the clearly expressed intention in favour of his wife, and of those in remainder after her, should she leave no issue at her death ?
I think the decree is erroneous, and that the wife, in the events that have actually happened, is entitled by the executory limitations of the will, to the whole estate.
Cabell, J.
This case presents a contest about real estate, involving the question, so often raised in this court, as to the effect of a limitation over after a dying without issue. And before I proceed to the examination of the particular case, the course of the argument at the bar, renders it proper, that I should state the principles, which seem to me to be applicable to questions of this nature.
*418 By the common law, it was not allowed to limit a fee? upon a fee. But it is natural to the possessor of property, to desire absolute dominion over it during his own life, and to render it inalienable afterwards, except on the terms which he himself may prescribe; and after the statute of wills, this disposition was so far indulged, as to allow a man, contrary to the principles of the common law, to limit a fee upon a fee, by his last will and testament. Pells v. Brown, Cro. Jac. 590. These limitations were called executory devises. But, as it was seen that they tended to a perpetuity, (for the estate was inalienable during the term allowed for the contingency, on which the limitation over was to take effect), no executory devise was tolerated, except where the contingency must happen, if at all, within a limited and reasonable period. And it became an inflexible rule also, that whenever a future interest was so limited by devise, as to fall within the rules laid down for the limitation of contingent remainders, such an interest is not an executory devise, but a contingent remainder. Carth. 310. Reeve v. Long, 4 Mod. 259. Purefoy v. Rogers, 2 Saund. 380. Butler’s Fearne, 386. The consequence of this rule is, that every limifation after a fee tail, must take effect, if at all, as a contingent remainder, and not as an executory devise, and will be barred by whatever bars the entail.
As estates tail and all remainders thereon may be barred, in England, by fine and recovery, and are, in all cases, barred ipso facto by our statute, the first inquiry, as to all limitations of a future interest after a failure of issue, is, generally, whether the first estate be an estate in fee or in tail.
An estate tail is an estate limited to the issue of the do-nee. And as wills are to be construed according to the intention of the testator, it follows, that whenever it shall appear, from the whole will, to have been the testator’s intention to give an estate descendible exclusively to the issue of the devisee, such estate will he deemed to be a fee tail, whatever be the words or form used by the testator. Thus, if the devise be to A. and his heirs, but if he die without *419 issue then to B. and his heirs: the devise to A. and his heirs, taken separately, would give him an estate in fee simple; hut the subsequent words shew', that he intended to give an estate to B. also, and that that estate was made to depend on A’s dying without issue. The question naturally arises, why was the interest of B. made to depend on A’s dying without issue? Was it, that the testator intended it as a mere contingency, on which the estate of A. was to he intirely defeated? or w'as it, that lie intended that if A. died leaving issue, that issue should have the estate, so long as there should bo any issue ? The courts, whose province it is to expound wills, have, from the beginning, uniformly and invariably, considered that it proceeded from an intention in the testator, to provide for the issue of the first taker, which intention could not be effected without holding that lie took an estate tail, and not a fee simple. Therefore, the words “if A. should die without issue,” were held to contradi the previous words “ A. and his heirs,” so as to give him a fee tail and not a fee simple. So, likewise, even where the devise is expressly to A. for life, but if he should die without issue, then to B. and his heirs, the courts, upon the same principles and reasoning, have uniformly considered it as indicating an intention in the testator, to provide for the issue of A. and, as that intention could not be effected, without holding that A. took an estate trausmissibk to his issue, they have uniformly and invariably held, thai the words “ if A. should die without issue,” eontroul the operation of the previous words, “to A. for life,” so as to enlarge his eslate from an estate for life, to an estate tail. It is iu vain to inquire now7, whether this construction was originally right or wrong, as conforming to, or departing from, the testator’s intention. It soon became an established rule of construction, that a limitation over after a general dying without issue, was as indicative of an intention to give the first devisee an estate tail, as if the estate had been given expressly to him and the heirs of his body. And this rule has never been departed from in a single instance. If, *420 however, there be any words in the will which clearly shew an intention m the testator, not to postpone the limitation ovei. unhi an indefinite failure of the issue of the first devisee, but to confine it to a failure of issue at the time of his death; as, for example, where an estate is given to A. for life, or to A. and his heirs, but if he die without issue living at his death, then over; in such case, none of the preceding reasoning applies; for it is then manifest, that the testator did not intend, by the words dying without issue, to provide indefinitely for the issue of A. but merely to limit a contingency, on which the estate of A. was to be defeated, or that of B. to take effect. In such case, therefore, the previous words are left to their natural operation, unaffected by those that follow. Consequently, A. takes, in the first instance, an estate for life only, and in the second, a fee simple, which, however, will be defeated intirely by his dying without issue living at the time of his death. But unless there be some circumstances in the will, indicating a restrictive intention, the words “ die without issue” are always considered as referring not to a failure of issue at the death, but to an indefinite failure of issue; and, thus, to create an estate tail for the benefit of the issue; and, consequently, to exclude the idea of an executory devise. And, as before observed, this rule has never been departed from. It is unnecessary to refer to authorities to establish a position, to which every lawyer will yield his assent.
Such is the law of England as to executory limitations, where the subject of the devise is real estate. Personal property cannot be entailed. But'if it be granted or bequeathed in such a manner as that if it were real estate, the grantee or devisee would take an estate tail, in such case, the full and intire interest passes to the grantee or legatee, as it would have done if the grant or bequest had been in the most absolute forms known to the law. Nor can there be, in personal property, a remainder in the strict sense of that word; and, therefore, every future bequest of personal property, whether preceded or not by a prior bequest, or *421 limited on a certain or uncertain event, is an executory devise or bequest, and falls under the rules by which that mode of limitation is regulated. Butler’s Fearne, 401. One of the most important of these rules is, that the contingency on which an executory devise or bequest is to take effect, must be such, that it must happen, if at all, within the compass of a life or lives in being, and twenty-one years and some months thereafter. And it matters not whether a term or other personal property be limited to the first devisee or legatee, indefinitely, or for life expressly, or to him and his heirs, or the heirs of his body, or to his issue or children; for the limitation over will be equally valid, under any of these circumstances; provided the contingency on which the limitation over is to take effect, he restricted to the period aforesaid. Id. 478.
In deciding, whether this rule, as to the restriction of the contingency, has been observed or not, it frequently becomes important to ascertain the meaning of the words, die without issue. I have before observed, that where real property is the subject of a devise, these words have been uniformly and invariably held to refer to an indefinite failure of issue, and not to a failure of issue at the death, unless there were circumstances in the will indicating a restrictive intention. The same rule of construction has been uniform ly and invariably applied to limitations over of personal property, after a dying without issue ; with this difference only, that, in cases of personal property, slighter circumstances will be regarded as evidence of a restrictive intention, than would be admitted in cases of real estate; such as the words, leaving, then, after, &tc. &.c. There must, however, be some evidence of restrictive intention, even in cases of personal property, other than that arising from the consideration, that the property is personal, and that it cannot be entailed: otherwise, the words dying without issue, are always held to refer to an indefinite failure of issue. And there is no difference, in this respect, between limitations of personal property, by such words as in the case of real estate would give *422 an express estate tail, and limitations of the same by such words as m the case of real estate, would give an estate tail by implication only.
That our statute of 1776, turning estates tail into estates in fee simple, did not convert into executory devises, any remainders limited on estates tail created before the passage of that act, but utterly extinguished the interest of the persons in remainder, was most solemnly decided in the case of Carter v. Tyler. As the statute makes no difference between estates tail created before, and those created since, (the same words being applied to both), the construction, as to the effect of the statute, must be the same as to both.
But an important question here presents itself: by what laws are we to be governed in deciding what is, or what is not, an estate tail ? The answer to this question will depend, I think, on the date of the deed or will by which the estate may have been created. Deeds or wills made before the 1st January 1787, the date at which the revised act of 1785 was to take effect, will be construed according to the laws and rules of construction which prevailed on the 7th October 1776, the date of the act converting estates tail into estates in fee simple : and deeds or wills made since the 1st January 1787, will be construed in the same way, as if they had been made before; with the exception, however, of that change produced by the clause, in the act of 1785, dispensing with words of perpetuity.
As this question was discussed with much earnestness in the argument in this case, and as it has been frequently the subject of controversy before, I may be excused for a particular examination of it.
1st. As to deeds and wills made before the act of 1785. The terms of the act of 1776, are, that “ any person who now hath, or hereafter may have any estate in fee tail She. in any lands fee. whether such estate tail hath been, or hereafter shall be, created by deed, will ike. shall from henceforth, or from the commencement of such estate tail, stand ipso facto seized &c. of such lands fkc. in full and absolute fee simple, *423 in like manner as if such deed, will &c. had conveyed the same in fee simple Sic.” It was, undoubtedly, competent to the legislature of 1776, to define a fee tail, and to proscribe the rules of construction, by which to determine when a fee tail had been, or should be afterwards, created. But be such definition is made, and no rules of construction are given. The conclusion is inevitable, that the legislature of 1776 intended, that the courts should be guided by the former laws and rules of construction upon this subject. And this was the construction put upon the act of 1776, by the legislature of 1785. For the revised act of that session, in speaking of estates tail, created before its passage, declares, “ that every estate in lands or slaves, which on the 7th October 1776, was an estate in fee tail, shall be deemed from that time to have been, and from thenceforward to continue, an estate in fee simple; and every estate in lands, which since'hath been limited, or hereafter shall be limited, so that, as the law aforetime, was, such estate would have been an estate tail, shall also be deemed to have been and to continue an estate in foe simple thus adopting, in express terms, the law, as it aforetime was, for the construction of deeds and wills made since the original act, declaring that there should no longer be estates tail in Virginia.
But this question has been judicially decided also. It formally presented itself in the case of Tate v. Tally, on a will made since the act of 1776, and which if it gave an estate tail, at all, gave it by implication only. It was strongly contended, that those rules of construction by which estates tail were implied, were originally founded on a regard to the benefit of the issue in tail, and that, as estates tail were not now tolerated in this country, the reason of those rules no longer existed, and the rules themselves had become inapplicable, and that, therefore, no estate tail ought to be considered as having been created, since the year 1776, unless it be expressly created. But the court clearly established the principle, that in construing a will made since the art of 1776, we arc not to he influenced by the *424 consideration, that estates tail cannot now exist in Virginia, but are to be governed by the rules of construction which prevailed before that act, notwithstanding the reason, on which some of those rules were founded, was dor. away by the abolition of estates tail. This principle has since been recognized and acted upon, in the case of Eskridge v. Fisher, and other cases cited at thé bar. Nor is there, in my opinion, any decision of this court, that militates against the doctrine established by these cases. It is true, that the cases of Dunn v. Bray, 1 Call, 338. and Smith and wife v. Chapman, 1 Hen. & Munf. 240. have been sometimes referred to as opposing decisions.
Dunn v. Bray relates intirely to personal estate, and of course is not applicable to a case of real estate; for every body must admit, that there is a difference between real and personal estate, in respect to these executory limitations; slighter circumstances being relied upon as evidence of restrictive intention, in cases of personal estate, than would be allowed in cases of real estate. The case of Dunn v. Bray itself affords an instance of this difference; for the limitation over of slaves, in that case, was supported on the strength of the words leaving and then, which would have been insufficient in a case of real estate. It is true, that, in Dunn v. Bray, judge Pendleton adverts to a diversity that was formerly insisted on by some of the english judges, particularly by lord Talbot, in Atkinson v Hutchinson, 3 P. Wms. 258. between a limitation over of personal property, by such words as in the case of real estate would give an express estate tail, and a limitation of the same, by such words as in the case of real estate would give an estate tail by implication only; and judge Pendleton seems to admit the distinction. But I have not found, that it has been recognized by this court in any subsequent decision; and it is certain that it has been long exploded in England. Butler’s Fearne, 478-486.
As to Smith and wife v. Chapman: in that case, a testator devised, by express words, an estate for life, in lands *425 nud negroes, to each of his three children, with remainders to the children of each; and in case of the death of either without children, remainder over to the survivor or survivors of his said three children. The great question in the cause, was, whether the children of the testator, (the first devisees), took estates for life only, or estates tail by implication ? The court decided that, independently of the act of 1776 docking entails, and of the act of 1785 dispensing with words of inheritance or perpetuity, the children of the testator took, according to the doctrines of english law, an estate for life only, and not an estate tail. It is true, that three of the judges, Roane, Fleming and Lyons, speak of not implying an estate tail for the benefit of the issue, since the act of 1776. But the expressions of judges must always be understood in reference to the cases before them. It will be seen, that the case of Smith v. Chapman was one, in which it was perfectly clear, in the estimation of all the judges deciding it, that a.n estate tail would not be implied, even in England. The expressions of the judges, fairly construed, amount to no more than this, that, in a case where an estate tail would not be implied, even according to the principles of construction which prevailed before 1776, they would not now imply one, on the pretence of benefiting the issue. It is impossible to put, any other construction on the opinion, even of judge Roane, who used the strong expression, that the act of 1776 had “cut up by the roots the pretence of implying an estate tail for the benefit of the issuefor he afterwards, in the same opinion, refers expressly to Tate v. Tally, as having established, that, in construing what is or is not an estate tail, we should refer to the former laws; and he quotes, with approbation, the expression of judge Fleming, in Tate v. Tally, “ that the intention of the act of 1776 was not, to alter the established rules of construction.” He, moreover, expressly justifies the implication of estates tail, according to the former rules of construction, notwithstanding the reason of those rules has ceased. And that this was what he really intended, is *426 clearly proved by the opinion which he delivered in the subsequent case of Tidball v. Lupton.
it cannot be admitted, that a law ceases to exist, merely . J because the reason which gave rise to its adoption has ceased. If this were admitted, we should demolish at once, much of the venerable fabrick of the common law. Rules of construction of wills even become, when long established, indicia of intention, and rules of property; and, like other rules of law, should be permitted to survive the state of things which gave them birth.
It may not be unworthy of remark, as connected with this branch of the subject, that personal property is as incapable of being entailed in England, as real property is in Virginia; and that, in England, if such an interest is given in personal property, as would amount to a fee tail if the property were real, the grantee or devisee will take the in-tire interest, in the same manner as if it had been given in the fullest manner known to the law. It becomes, therefore, frequently necessary to decide, whether the legatee of personal property takes such an interest in it, as would be a fee tail, if the property had been real: And it is very remarkable, that the rules for the construction of wills, by which estates tail are implied in real estate, have been applied by the englisli courts to wills of personal property, for inferring an intention in the testator to give such an interest therein, as would, if the property were real, amount to an estate tail. Thus, if personal property be given to one for life, but if he die without issue, remainder over, the legatee takes, not an estate for life, but the intire interest, merely because such a devise of real property would give an estate tail: and yet the reason for implying an estate greater than a life estate, is wholly inapplicable to personal property. Love v. Windham, 1 Ventr. 79. Butler’s Fearne, 486.
2dly. As to deeds and wills made since the act of 1785. That act, in the first part of its provisions on this subject, puts them on the same footing with deeds and wills made before *427 die passage of the act, by declaring “ that every estate in lands, which since [the 7th October 177G] halhbeen-limited, or hereafter shall be limited, so that, as the law aforetime ivas, sucli estate would have been an estate tail, shall be deemed to have been, and to continue, an estate in fee simple.” This part of the act makes the same rules of construction common to estates created before and to those created since the act 5 namely, the rules of construction recognized by the law, as it aforetime was. But it was surely competent to the legislature of 1785, to make any exceptions to or changes in those rules, that it thought proper: and it did make an exception^ as to deeds and wills to bo made after the passage of that act, by declaring in the sentence almost immediately succeeding, that “ every estate in lands, which shall hereafter be granted, conveyed or devised to one, although other words heretofore necessary to transfer an estate of inheritance, he not added, shall be deemed a fee simple, if a less estate he not limited by express words, or do not appear to have been granted, conveyed or devised, by construction or operation of law.” It must be admitted, that this section makes a most important change in one of the former rules of construction j and it is imperative on the courts. As to estates created since the act of 1785, the expression, “ as the law aforetime was,” must, therefore, be understood as controlled' by tlie clause just referred to. But, with this exception, there is no difference between the construction of deeds and wills made before the statute of 1785, and those made since.
As to the construction of the will in the case now before us : although it is sometimes permitted to transpose the different parts of a will, I concur with judge Carr in thinking, that it ought to he done with great caution, and that, in general, we are much more likely to arrive at the real meaning of a testator, by pursuing the order in which he has expressed his thoughts and intentions, than by inverting or changing that order. The testator, in this case, had a wife and a daughter, his only child. He seems to have re *428 gardecl them as equal objects of his bounty. From the first part of the will, it is perfectly manifest, that each, during iier life, was to have an equal participation in his estate; and that, in case the wife should die without any more issue, j.jle wf10je estate was to go to the daughter, and in case the daughter should die without any issue, the whole was to go to the wife. If there had been nothing more in the will, I think it could not be questioned, but that each of them would have taken by the will a fee tail in a moiety of the land, and an absolute interest in a moiety of the personalty. I do not think the last clause in the will, can have any influence in changing the construction of it, as to any part of the property, other than the particular property to which it professes to relate. That clause relates exclusively to the property which came by the wife; and as to that, the testator says his wife is to have the disposal of it, in case she “ should marry and again have issue.” The testator thought (whatever may be the legal construction) that the former part of the will would not give to his wife the disposal of any part of the property, before the death of his daughter without issue. But thinking it proper to give her greater powers, as to that portion of it which came by her, he declares, in the last clause of his will, that his wife shall have the disposal of it, in case she “ should marry and again have issue.” This clause was introduced, I think, for the sole purpose of placing the property that came by the wife, on a footing different from that on which, he thought, it stood under the former part of .the will. He intended by the latter clause, to give to the wife, over the property that came by her, a power which he did not intend her to have over the rest of his estate. He intended to give her this power, in the event that she “ should marry and again have issue.” These last words, therefore, being used for a different purpose, can afford no criterion for construing the words in the first clause, “ in case my wife should die without any more issue.” Nor do I think that the generality of the expressions “ die without any more issue,” can be affected, as to *429 the land, by the subsequent limitation over, on the death of both wife and daughter without issue, of the property that came by the wife, “ to her brothers and sisters that may be J , J then living,” even if it would be so as to any oí the personal property; as to which however l give no opinion. 1 therefore think, that the wife took a fee tail in a moiety of the land; and I concur in the opinion, that the daughter took a foe tail in the other moiety; both of which were converted into estates in fee by the act docking entails.
Green, J.
being of opinion, that the daughter was entitled to a fee in one moiety of the land, and to the remainder in fee expectant on the wife’s life estate in the other moiety; and Coalter, J. being of opinion, that the wife, in the events that have actually happened, was entitled to the whole; and Cabell and Carr, J. holding, (hat, by joint force of the will and of the statute abolishing entails, the daughter was entitled to one moiety in fee, and the wife to the other moiety in fee ; the decree was in conformity with this last opinion.