Carr, J.
I think the judgement right. The provisions made by the will for the expected child seem to me to have no influence on the construction of the will, in the actual state of things; but if they had, it would not vary the con *106 elusion to which 1 have come. My understanding of the will is, that the wife look an estate for life or widowhood in the whole, property. Whether at her death or marriage, the direction to sell, was absolute, or conditional depending on the birth of an after child, I do not think it material to consider, as it cannot affect the limitation under which the plaintiffs claim. Under the words “ if my son Miles should die without lawful issue, it is my desire that the whole of my estate should go to my wife’s brothers and sisters” fee. it is clear to me, that Miles took (if you consider the subject to be money) the absolute property; but if not money then he took the land (the subject of this suit) in fee tail; it being the plain intention of the testator to provide for the issue of Miles indefinitely. Whether Miles took an estate tail express or by necessary implication, makes no difference; as is shewn in Jiggetts v. Davis, 1 Leigh, 368. which case, as also that of Griffith v. Thompson, Id. 321. settle the law on this subject, as it had been often settled before in this court. I think it better to refer to these cases, and to say that they rule the present, than to enter again into the discussion of the reasons and authorities which belong to the¡ subject,.
Brooke and Cabell, J. concurred.
Tucker, P.
The principal question in this case turns upon the construction of James Porter’s will, and involves some interesting principles in relation to contingent limitations, which have been firmly settled by a series of adjudications now too numerous to be disturbed. The effort of the appellants’ counsel, therefore, has rather been to keep the present case clear of the influence of those adjudications, than to attempt to call in question, what the interests of society so. emphatically require to be regarded as no longer questionable. It must be admitted on all hands, that the principle stare decisis, is of peculiar importance in whatever relates to the title to property, and to real property in particular. Among other things, a continual fluctuation in *107 the decisions of the courts on the construction of wills, is _T calculated to produce the-most serious evils. JNo testator can with certainty dispose of his estate, no counsel can advise, no conveyancer can transfer, no purchaser can with safety acquire, if the language which is on one day construed to convey but a limited interest, shall on the next be held to pass the greatest estate that can be enjoyed in real property; or if what is at one time considered as a vested and certain interest, should at another, be regarded as contingent and uncertain. The purchaser, under the first decision, supposing he was acquiring a substantial estate, finds, when the next is promulgated, that he is but the holder of an interest which may never vest. By this judicial inconsistency, as by legerdemain, his gold is turned to dust; and if such a course of things could long prevail, property would lose its exchangeable value, because no one could certainly know what he was acquiring. However little, therefore, any rule or set of rules may square with our own peculiar notions of propriety or expediency, or with our opinions of the design of the contracting party, we must sacrifice those notions and opinions to the established course of decision and construction. In this case for instance, the interpretation of the phrase “ if he die without issue,” comes for the hundredth time before the court. There can be no doubt, I think, that we should adhere to the meaning heretofore attached to it, though we have a strong evidence in a legislative declaration, that these terms are used by most testators, in a sense very different from the artificial meaning attributed to them by the courts. I shall not stop to inquire, whether this is really the case, though I think it probable that many a testator would renounce what is called the natural signification, if its consequences were explained to him, and adopt the technical exposition of the courts, as best calculated to effect bis principal object and intention. Be this as it may, I do not think we can depart from the great land-mark which has been erected on this subject, and I shall accordingly make it my guide on the present occasion.
*108 What then is the provision of this will? The testator devises his land and negroes to his wife, during life or widowhood, for her own .and her son’s support and for his education. Presuming her to be pregnant, he directs that if the afterborn child be a boy he shall partake of the ad-, vantages given to his son Miles, who was in esse: arid het afterwards provides, that at the death or marriage of the wife the land and negroes should be sold and the money equally divided between the two sons; and that if Miles (the son in esse) should die without issue, the whole should go to his brother or sister, and if he should have neither, then to his wife’s brothers and sisters to be divided among them, as they might think proper.
Before we consider the effect of these two last clauses, it may be well to consider what would be the effect of the will, and how the property would have passedj without them. In that event, there would only have been a life estate given to the wife for her own and her son’s support, with a reversion in fee descending upon him, which would have immediately vested. If, however, after the testator’s death another child had been born, the reversionary interest in fee would have devested as to one moiety, and that moiety in-fee would have instantly vested in such posthumous child. Had either of these children then died leaving children, such children would have inherited the estate of their father; or if either had died without children, the other would have been his heir.
• The testator, however, aware, perhaps, that the land was not worth dividing in kind, superadds the provision, that, if his wife should now be with child, and that a boy child, that child should be supported and educated as the other, and that, at the death or marriage of the wife, the land and negroes should be sold, and the money divided between those two children.
Here then is a provision which materially affected the character of the interest of the son Miles. On his father’s death he became immediately invested with a reversion in *109 fee in lands'(for I am still considering the case without regard to the ulteriour limitation). This reversion was, m-deed, subject to be devested as to one moiety, in favour of J . . the posthumous child, independent of the direction to sell j but by virtue of this direction, Miles, at his father’s death held the fee in the land itself, subject however to be defeated, not as to a moiety only, but as to the whole, by the birth of a son; upon whose birth neither would have any real estate, but only a right to one moiety each of the proceeds of the sale directed by the will.
In this aspect of the case, then, and still keeping out of view the ulteriour limitation, each would have had a vested interest in a personal subject, that is the money for which the land might have sold. (See Selby and wife v. Morgan, 6 Manf. 156.) And if cither had died without children, the other and the mother would have taken his share; or if either died leaving children, the children would have taken their parent’s portion; or rather, in both those cases, the interest would have passed to the personal representatives, and have been distributed accordingly. But, in tho event of the whole interest devolving upon either, he would have had a right to waive the conversion of the land into money, and to have demanded the land. It is not amiss to remark, that as the happening of this event of the birth of a second son, must have occurred within nine or ten months, this contingency could not long have suspended the ultimate character of the estate. And, as no child was ever born; as the event never occurred, upon which Miles’s reversionary interest in tho land was to be converted into a mere interest in a personal subject; it is obvious, that his interest always was real estate, and has been transmitted to his heirs as such, or has passed to those in remainder, if the limitation over is effectual; which is the next point we have to consider.
In doing this, we shall consider the limitation over, as if no provision had ever been made for the sale of the estate; for, in this view, I do not see that that provision will make *110 any difference, and in point of fact it never was brought into life by the happening of the contingency. Patting that provision out of the question, the' case in effect is thus: the testator devises his land to his wife for life or widowhood, and then provides that if his heir at law dies without issue the estate shall go over first to a posthumous son or daughter, if there be one, and if there be none, then to his wife’s brothers and sisters. The operation of this limitation would, in one respect, differ in the two cases. In the case of the brother or sister, the limitation over could only be of a moiety, since he or she would already have had the other moiety; but if there was no brother or sister, the limitation over to the wife’s .brothers and sisters was of the whole land, since the whole would have been vested in Miles.
The case presented seems to' me to be precisely that which has often been decided. It is the case of a devise over to another in case the heir at law dies without issue. This has been construed to give the heir at law an estate in tail. Walter v. Drew, cited 1 Leigh, 401. But, in that case, as the devise was over to another, the reversion in fee was in another person than the heir; whereas in the case at bar, the estate tail would be in the heir with a reversion in fee (dependent upon it) also in him. I do not perceive that this would make a difference. For a man may make a limitation to his own heirs special, which will be good, and the heir will take such estate as purchaser, and will take also the reversion thereupon by descent. Butler’s Fearne, 51, 2. If this be so, then the limitation in question vested an estate tail in Miles Porter, which was converted into a fee, and thus cut off effectually all the subsequent limitations. But if these words are not considered as creating an estate tail, but as only subjecting Miles’s fee to be defeated by the event of his dying without issue, then the limitation is void, because it is upon an indefinite failure of issue. It is, however, my own opinion, that, following the decisions which require all constructions of words of entail to be made as the law aforetime was, except in the *111 cases which fall within the influence of the principle settled in Smith v. Chapman, 1 Hen. & Munf. 240. the words if Miles Porter should die without lawful issue must be construed in this will, as giving him an estate tail, and leaving the reversion in fee to descend upon him. If so, the entail is converted into a fee and bars the remainders over.
A great effort was made to take this case out of the influence of the long train of adjudications on this subject, and to extract from the will something to tie down the words dying without issue, to a definite period, within the time prescribed by the rules of law. The very able view which has been taken of the case by the appellants’ counsel, has convinced me, however, much more, that nothing is to be despaired of under his auspices, than that there is any thing whatever to tie up the indefinite failure of issue. The consequences and supposed difficulties and absurdities which grow out of the construction contended for, have been strongly presented. They are such, however, as must very frequently occur in the wills of uninstructed and unassisted testators. But, on the other hand, there are considerations which are, and have for centuries been, recognized as having great weight in the construction of wills. A respect for that intent of the testator, which is supposed to have in view a provision for the issue, and a desire to avoid the introduction of what are called perpetuities, lay at the foundation of these rules. In the application of them, what is called the particular intent is often violated to satisfy the general intent, and the ordinary sense of terms yields to that which seems artificial; but it is by no means certain, that if the consequences of thus giving to the language of a testator, what is called the natural meaning, were duly explained to him, he would not shrink from the interpretation, and fly to the technical signification. Thus, in the present case, suppose the appellants’ counsel to succeed in proving, that the words die loithoul iss'ue are tied up so as to render the limitation'over valid : what is the stale in which the testator has left his only son’s interest in his small estate? 1st, He has *112 given to his wife the whole of the land during her life for her own and her son’s support. Until her death or marriage, she is the mistress of it; and she might live until her son reached an advanced age. The reversion dependent upon this life estate, remote as may be the period of its vesting, he is not content to leave without a clog. It is, indeed, a reversion in fee, but it is defeasible by his dying without issue in the lifetime of his mother; a contingency that might not be determined for half a century. And for whose benefit is this fragment of his estate in the hands of an only child, to be defeated by this contingency ? Not his own kin, but his wife’s brothers and sisters. And what is the effect upon his interest? to destroy its exchangeable or saleable value, at the least; the only value that a reversion often has to the owner. For, as his fee simple is a defeasible one upon the'contingency of his dying without issue in his mother’s lifetime, no purchaser could be found to venture in so hazardous a lottery. Had the question been asked of the testator, whether he was willing so to clog the reversionary interest of his son, as that he could not use it, and this for the purpose of securing it to his wife’s relations, I cannot persuade myself that he would have answered affirmatively. He would, unhesitatingly, have preferred the construction, which would have left in his only child an efficient power over the estate, to that which would have fettered him by restrictions, for the benefit of strangers to his own blood. It is obvious too, that the construction contended for, would have other effects which the testator never could have contemplated. Had a posthumous son been born, he would have held his portion unclogged with a limitation over, and might therefore have sold or disposed of it; and, if Miles had died and his portion devolved on his brother, the brother would have held even that, unfettered by any further limitation over; while Miles himself, the child endeared to his father by having received his caresses, Í3 less favoured than one whose existence was merely in contemplation, and who in point of fact never had existence. *113 By my rule of construction, both are on an equal footing, for the interest of both is absolute.
1 am, therefore, decidedly of opinion, that the limitations over to the brothers and sisters of the wife are void, and that the judgement should be affirmed.