Carr, J.
The question is, what estate was given by the will of Matthias Christian to his daughter Lydia and her husband John Bramble? Was it an estate for life, with a contingent remainder to such of the offspring as shall be *93 living at the death of the survivor? or an estate tail, hy iniplication, in the first takers ?
It was admitted, and must be admitted, that the word offspring is as much nomen collectimm as issue, embracing the whole line of descendants, of which the most remote is just as much the offspring of the original stock, as the most immediate. Suppose the devise had been to husband and wife for life, and to the longest liver, and then to their issue, and in default of such issue, over; it would hardly have been denied, that, according to the rule in Shelly’s case, the word issue must be taken as a word of limitation, and the estate of the parents an estate tail. But it is said, that admitting the general words for default of issue, or offspring, would be taken to mean an indefinite failure of issue, yet there are words superadded in this devise, which tie up the contingency to the death of the tenant for life, shewing the word offspring to be used as a word of purchase; such offspring as should be living at the death of the surviving parent: and the superadded words supposed to have this effect, are the limitation to the offspring, if any by the daughter Lydia, and as they (the parents) should think best to give it. Let us examine, first, the effect of the words, if any by the daughter, and then that of the power of appointment.
“ I give to my loving daughter L. B. and her husband J. B. the rest of my real and personal estate, during the life of the longest liver of them, and then to their offspring if any by my daughter L.” Do these words shew, that the testator meant, if there be any offspring living at the death of the surviving parent? No adjudged case, no dictum even, has been adduced to prove that such a construction has ever been given to them; neither is that, to my mind, the import of the language. The testator was making provision for his daughter and her descendants: in looking forward, it was natural for him to reflect, that his daughter might have no offspring at the time of his death, and none born after, and he would of course direct to whom, in that event, he wished *94 the property to go; he did not wish it to go to the issue of the husband by any other woman; therefore, he said to their offspring if any by my daughter—these last words being mere expletives, thrown in from abundant caution, and shewing that the matter pressed upon his mind. I call them expletives, because we know that a devise to husband and wife for life, and then to their offspring, means their joint offspring, and that if they have no offspring there will be nothing on which the devise can operate : but the testator did not wish to leave this to inference or construction, and therefore said, “ to their offspring if any by my daughterIf any, when ? why, if any at all. This is further shewn by the limitation over:—it is not in default of sueh offspring living at the death of the surviving parent, but, generally, in default of such offspring; shewing that his mind was not fixed to any limited time, but that the estate was not to go over till after a general, indefinite failure of the offspring of the first takers. It was said, such offspring meant offspring living at the death: how can that be ? Nothing had been said before of offspring living at the death. The testator had given the estate to his daughter and son in law for life, and then to their offspring ; and the words in default of such offspring meant, simply, and clearly, offspring of the son in law and daughter. This exposition of the words if any by my daughter, is much strengthened by the other clauses of the will, where w'e find the phrases if any and if she have any, used by the testator indiscriminately, as being exactly synonymous; thus, “ I give to my step daughter Nancy Ashley my house &c. to herself and her offspring if she have any, if not, to her half sister Lydia Bramble and her offspring if any; if not, to her sister Molly Baynes’s offspring.” Again, in the latter part of the clause under consideration, and by the very devise under which the lessors of the plaintiffs claim, the testator after giving the estate to Lydia and her husband for life, and then to their offspring, adds—“ and in default of such offspring to Molly Baynes’s and Nancy Ashley’s offspring, if they have any &c. and if they have none, to the *95 poor of the parish ike.” Surely, no one will contend, that a devise to A. for life, then to his issue, if he have any, and in default of such issue, over,—will make A. tenant for life only, with a contingent remainder to such of his issue as may be living at his death. It is too well settled at this day, and for ages past, that in such ease, A. is tenant in tail, the word issue being taken as a word of limitation. Our case seems to me exactly the same, using offspring for issue.
Let us now consider, whether the power of appointment changes the case, and makes the word offspring a word of purchase ? “ To their offspring, if any by my daughter Lt. as they shall think best, to give itto their offspring; not a part; not to such as their parents shall appoint; but to the whole offspring, as they shall think best to give it. To shew that this power makes no difference in the construction of the will, I think it sufficient to refer to the case of Ball v. Payne, 6 Rand. 73. and the cases there cited; particularly the case of Doe v. Goldsmith, 7 Taunt. 209. 6 Eng. C. L. R. 73. where the devise was to F. G. for life, and immediately after his decease, to the heirs of his body lawfully begotten, in such parts and shares as F. G. should by deed or will appoint, and in default of such heirs of the body of F. G. then immediately after his decease, over to J. G.; and the question was, whether F. G. took an estate tail ? Chief justice Gibbs, in delivering the opinion of the court, thus states the argument of the counsel who contended that F. G. took an estate for life only—“ that the words heirs of the.body, mean children of F. G., for when he devises to the heirs of the body of F. G. in such shares as the tenant for life shall appoint, that is a gift to persons who must be in esse when F. G. was to appoint to them $ that the default of such issue, must therefore be a default of such persons, who can only be children; and that the testator by this expression, therefore, manifestly means to refer to the same persons who were to take as tenants in common under the appointment, not to the heirs of the body of the *96 first taker, in the ordinary legal sense.” This is the precise argument used in the case before us, as to the effect of the power of appointment. But in Doe v. Goldsmith, the court said—“ It is an established rule, that where a general intent appears, any particular intent which appears, however clearly expressed, shall never take effect, where it is inconsistent with the general intent; and it was clearly the testator’s general intent, that the estate should never go over to J. G. till all the heirs of the body of F. G. were extinct;” and, therefore, that it was an estate tail in F. G. So said this court, in Ball v. Payne, where there was the same power of appointment. And so say I here, where the general intent of the testator, expressed by the words in default of such offspring, is clear, that the estate should not go over to the offspring of Molly Baynes, till all the issue of his daughter Lydia was extinct.
I see nothing, then, in this case to take it out of the settled course of decision, in support of which I shall not cite authorities, but merely refer generally to those with which we are ail so familiar, and with which our books teem.
With respect to the operation of our law dispensing with words of inheritance, upon this subject, I refer to the case of Ball v. Payne, where the point was expressly decided, and though by a court of only three judges, I feel authorized to say, from conversations with my absent brethren, that they approved the decision.
Upon the whole, I conclude, that John Bramble and Lydia his wife took an estate tail, under the will of Matthias Christian, which was enlarged by our statute into a fee, which on the death of the wife, became the sole estate of the husband, and descended at his death, to the lessors of the plaintiff; and, therefore, that the judgement must be reversed, and judgement entered for the appellants.
Cabell, J. The real question in this case, is, Whether the words in the will of Matthias Christian, purporting to limit the estate to the offspring of John Bramble and Ly *97 dia his wife, after the determination of the previous life estate given by the will to them and the longest liver of them,—were words of purchase to the offspring, or words of limitation operating to enlarge the life estate of Bramble and wife into a fee tail ? I can see nothing in the case, to distinguish it from Ball v. Payne, 6 Rand. 73. If that case was rightly decided, it must rule this : I did not sit in it, but I have considered it with great attention ; the opinion delivered by judge Carr, for the court, has my entire approbation ; I could add nothing to its strength or clearness. I am, therefore, of opinion that the will before us gave to John and Lydia Bramble an estate tail; and, consequently, that the judgement should be reversed, and entered for the appellants.
It may not be improper, however, to observe farther, that if the words offspring of John and, Lydia Bramble, be (as I think they are) words of limitation, then our statute of 1785, dispensing with words of perpetuity and of inheritance, can have no application to the case; for that statute was not intended to convert words of limitation into words of purchase, but to give a new effect to words that are already words of purchase. But I am still of the opinion expressed in Jiggetts v. Davis, 1 Leigh 368. that there may be cases of wills made since the statute of 1785, on which that statute will have an overruling influence, in deciding the question whether the estates devised be or be not fees tail: as, for example, where the extent of the first limitation in a will, depends upon the extent of the second, and the extent of the second depends on the operation of the statute. I allude to such cases as Roe v. Jeffery, 7 T. R. 589. There, the devise was “ to T. F. and his heirs forever, and in case he should leave no issue, then to E. M. and S. or the survivor or survivors of them, share and share alikeand the court of King’s Bench decided that the limitation over to E. M. and S. was good as an executory devise limited on the fee devised to T. F. solely on the ground that E. M. and S. took only life estates; for, as the limitation to them *98 was to take effect, if at all, in the course of a life in being, ’s obvious, that the failure of issue, on which the estate was to go to them, was not an indefinite failure, but a failure of issue living at the death of T. F. and, therefore, there was no ground for implying an estate tail. And such would, I presume, be the decision of this court, on the same case arising on a will made before the statute of 1785 dispensing with words of perpetuity and of inheritance. But I apprehend the result would be widely different, on a will made since that statute; for I suppose no one could doubt, that the limitation over to E. M. and S. would, by virtue of the statute, give them an estate in fee simple, in the same manner as if it had been given, expressly, to them and their heirs for ever. This would, of itself, remove the sole ground of the decision in Roe v. Jeffery. There would, then, be nothing to restrain the generality of expression, and confine it to a failure of issue living at the death; for the limitation over to E. M. and S. and their heirs, would take effect at any period, however remote, when the issue might fail: this would manifest an intention in the testator, to provide for the whole line of the issue of the first taker: and whenever that is the case, the limitation in favor of the first taker will be held to be a fee tail, in whatever words it may be couched, since, otherwise, the general intent of the testator would be defeated. I have thought it necessary to say thus much, as to the statute of 1785, to prevent misconception as to the extent of the opinion I expressed in Jiggetts v. Davis.