Brooke, J.
This is one of those cases, in which there has been so great a diversity of opinion among judges and lawyers, since the decision of the case of Pells v. Brown, Cro. Jac. 590. which is said by lord Kenyon (in Porter v. Bradley, 3 T. R. 146.) to be the foundation, and as it were the magna charta of executory devises: a diversity that has, I think, proceeded from not enough regarding a rule of construction, settled and admitted ever since Shelley’s case— that the general intent of the testator to provide for all the *99 issue of the first devisee, must overrule any particular intent, no matter how plainly expressed, unless it amount to evidence that the testator did not intend to provide for issue generally. In the case before us, I think it impossible not to see, that the testator did not intend the estate devised to his daughter Lydia and her husband for life, and then to their offspring, to go over to the offspring of Molly Baynes and Nancy Ashley, so long as there was any offspring (which is as comprehensive as issue) of his daughter Lydia and her husband; and that to carry that intent of the testator into effect, Lydia and John Bramble must take an estate tail according to the settled rule of construction, “ as the law aforetime was.” Nor can any inference against this intent of the testator to provide for all the offspring of Lydia and John Bramble, bo drawn from the circumstance, that, in the devise over to the offspring of Molly Baynes and JSfancy Ashley, no estate is given to Molly Baynes or Nancy Ashley; on the contrary, I think, this last devise to the offspring of Molly Bay?ies and JSfancy Ashley, strengthens the evidence of the testator’s intent to provide for all the offspring of Lydia and John Bramble before the estate was to go over to the offspring of the other two. Lydia Bramble was his daughter, and her offspring must have been more dear to him, than the offspring of his step daughters ; and accordingly, the testator evidently preferred all the offspring of his daughter Lydia to any of the offspring of the step daughters. The power to Lydia and John Bramble to dispose of the estate to their offspring, as they shall think best, is not in conflict with his intent to provide for all their offspring (or issue) so long as there should be any. The case of Doe v. Goldsmith, cited by this court in Ball v. Payne, was a stronger case than this; and yet no inference was drawn from the power of appointment, to change the intent to provide for all the issue, however remote. Nor can I think, that, consistently with the decisions of this court, any stress can be laid on the existence at the date of the will, of the provision of the statute of 1785, re *100 enacted from that of 1776, abolishing entails, or of the other provision of the same statute, which dispenses with words of inheritance or perpetuity to pass an estate of inheritance. 12 Hen. Stat. at Large 156, 7. If the intention of the testator is to be inferred from a supposition, that those statutory provisions were in his contemplation when he made his will, we must take it that, as he knew that his will would be construed “ as the law aforetime was,” and that the latter provision would not be so applied as to defeat the intent and effect of the former, he would have taken care, in wording his will, to conform to the construction thereof, “ as the law aforetime was;” and if he had intended, that the estate devised to the offspring of his daughter and her husband, should go over before a total failure of their offspring, he would have used terms which, under the construction “ as the law aforetime was,” would have created an executory devise over to the offspring of Molly Baynes and Nancy Ashley. He would not have relied on the application of the statute, to give an estate of inheritance to the offspring of his daughter and her husband. To give consistency to the two provisions of the statute, it will be impossible to apply the provision which dispenses with words of inheritance to pass an estate of inheritance, to any case, in which, without it, an estate tail, or an executory devise, would be created, under the rules of construction “ as the law aforetime was.” It would be to reject altogether the language of the provision for abolishing entails; and, as the object of the other provision dispensing with words of inheritance, was to enlarge an estate of inheritance, which under the common law (intended to be repealed) was only a life estate, it would be to defeat its object. If this provision should be applied in such a case as that of Roe v. Jeffery in 7 T. R. by giving to the survivor an estate of inheritance instead of a life estate only, which made the limitation there a good executory devise, his life estate (under the old rule) would be entirely defeated, instead of being enlarged to an inheritance, as was intended by the statute. *101 It cannot be said, that this construction of the statute of ... 1785, would render any of its provisions ineffectual: on the contrary, it may be applied to every case, in which an estate is given either without words restricting it to a life estate, or words of inheritance, and in which, by its application, the rules of construction, “ as the law aforetime was,” in respect to estates tail and executory devises, applied to the words in the deed or will, will not be affected; so as that the application of this provision of the statute shall serve only to enlarge an estate for life into an estate of inheritance, without defeating the life estate, or changing an estate tail into an executory devise, or vice versa.
I concur in the opinion, that the judgement should be reversed.
Tucker, P. The testator devised the residue of his real and personal estate, to his daughter Lydia and her husband John Bramble, during the life of the longest liver of them, and then to their offspring, if any by his daughter Lydia, as they should think best to give it; and, in default of such offspring, to Molly Baynes’s and Nancy Ashley’s offspring, as they think best to dispose to their offspring, if they have any; and if they have none, then to the poor of Llisabeth-River parish. This devise clearly evinces the testator’s intention, that his daughter and his son in law should have but an estate for life, and that the estate should go over after their deaths to his grandchildren; for, had an estate either in tail or in fee been given to the parents, the children might have been cut off by their alienation. But, while this was obviously his object, yet this particular intent, it is admitted, must be disregarded, if the enlargement of the life estate into a fee tail, is essential to effectuate his principal design. This was, that the estate should not go out of the family of his daughter, over to the family of Molly Baynes and Nancy Ashley, as long as there should be any descendants of his daughter, however remote in the line of succession. This subordination of the particular to *102 the general intent, is readily admitted, and from it has sprung . , the numerous cases, in which estates for life, followed by a limitation over upon an indefinite failure of issue, have been enlarged into estates tail. To produce this effect, however, there must be a limitation upon an indefinite failure of issue. Such I conceive not to be the case here. The devise over to the offspring of John Bramble and wife, if any by his daughter Lydia, as they shall think best to give it, is, according to my conceptions, a designation of the persons who are to take, and not the addition of an inheritable quality to the life estate of the first takers : in other words, they are words of purchase, not words of limitation. They are equivalent to the offspring of Bramble and wife living at their deaths ; and if so, no estate tail is created.
That the words above referred to, are intended to designate those descendants of the testator’s daughter, who might be living at the death of the survivor of herself and her husband, appears from the language and character of the bequest. For,
1st. The estate is to go to “ their offspring by his daughter Lydia, as they shall think best to give it.” Here then was a power of appointing in what manner and portions the offspring were to take. The language of the will conveys, with a force not to be resisted, a power to the parents to divide the estate among their children, at their discretion. In doing this, one might have more, another less; and if so, they cannot take as heirs, but must take as purchasers; for, as heirs, they would take according to the law of descents, by which equality is the rule, where the descendants are all in equal degree. The testator, therefore, could not have designed to use these words as words of limitation or inheritance ; as pointing out the indefinite line of succession. He could not have contemplated their taking as heirs, when he was providing a power of appointment by which they might take unequally. And it is, in this view, unimportant whether the power was or was not executed : the conferring the power, is the important matter, as pointing out distinctly *103 the character in which the testator looked upon the offspring to whom the devise over was made; that he viewed them as purchasers, and never contemplated that they should take as heirs. If, as seems to be supposed, any illustration of the testator’s meaning in this clause, is to be drawn from the other clauses of the will, the most ample evidence is afforded, that the word offspring here, is used as a word of purchase. In a preceding clause, he limits another part of his estate over to Molly Baynes’s offspring, as she chooses to give it, without devising any interest to Molly Baynes herself; and in the subsequent limitation over of this very estate devised to Bramble and wife, it is devised to the offspring of Molly Baynes and Nancy Ashley, if they have any, as they shall choose to dispose to their offspring, without giving to the mothers themselves any estate whatever. Now, nothing is more clear, than that as no estate was given to Molly Baynes and Nancy Ashley, they had no estate to enlarge, and their offspring, if they took at all, could only take as purchasers, and the word of course is a word of purchase and not a word of limitation.
2ndly. That the offspring are to take as purchasers, is not only pointed out by the circumstance, that the estate was to be divided among them according to parental discretion, but the same thing seems to me distinctly conveyed by the very power of appointment itself. What offspring are to take and how ? The offspring of Bramble and wife; and they are to take according to appointment; and, as this appointment was contemplated to be made by persons in being, the testator could only have contemplated its being made to persons in being : and this altogether excludes the idea of his having designed by these words to embrace the whole line of succession.
In the construction I place upon the language of the testator in this clause, [ draw no distinction between the words offspring and issue. I freely admit they mean the same thing ; and are to be construed alike in this case. In that view, however, it may be well to present two cases, to illus» *104 trate and sustain the two positions I have taken. The first is the well known case of Doe v. Laming, 2 Burr. 1100. That was a devise of gavelkind lands to A. and the heirs of her body lawfully to be begotten, as well females as males, and to their heirs &c. to be divided equally, share and share alilce as tenants in common. These words shewing clearly that the devisees were to take as purchasers, since they could not take in the mode prescribed if they took as heirs, the first taker was held to take an estate for life only, although the superadded words of inheritance would not of themselves have sufficed to take the case out of the operation of the rule in Shelley’s case. So in this case (to apply the language of Mr. Fearne) the word offspring does not stand independent and unqualified, but is corrected and explained by the words which are coupled with it. Those words are incompatible with and expressly break the descent, because the parties may take unequally by appointment, and not equally as heirs. Butler’s Fearne, 154. 197. The other case I shall cite, is that of Hockley v. Mawbey, 3 Bro. C. C. 82. the similarity of which to the present is altogether remarkable. It was a devise “ to the wife_ for life, remainder to the testator’s son R. R. and his issue lawfully begotten, to be divided as he shall think fit, and if he should die without issue, remainder over: held, an estate for life with a power, and the remainder good. Lord Thurlow said—“I think the testator intended, and has expressed his intention, to give a contingency with a double aspect; in one event, a gift to the children of the son if he should have any, and if he should not have any child, then to be sold for the purposes of the will. He did not mean the estate to go as an estate tail, but that the children should take distributively, in which case they must take as purchasers, and the consequence is, the son took only an estate for life. He had a power to divide; but if he did not, there was an interest in the children that would entitle them to an equal division. It is observed, that if he had no children, it would go to grandchildren ; it would so,—but *105 only as descriptive of his power: in order to take, they must be alive at the son’s death : it is not sufficient to say they are immediate descendants of Richard (the son) to make them take under the estate tail. It is sufficient the division must take place at the death of Richard, which is within the rules. Therefore two events were provided for: 1. There being children of Richard; in which case they would take: 2. There being no children; in which case the estates vested in the persons described,”—that is, in the remaindermen.
3rdly. I proceed next to consider some other expressions of this will, which ought not to be dissevered from the rest, but regarded in connexion with them. The estate is given to Bramble and wife, and the longest liver of them, and then to their offspring if any by the daughter Lydia, as they shall think best to give it. In connexion with this clause, it is important to advert to the fact, that the testator had full knowledge when he made his will (which is to be understood as speaking from its date) that his daughter Lydia had offspring at that time. He could, therefore, only have used these words if any, which irresistibly imply uncertainty, in reference to some future state of things; the persons contemplated by him to take, were not such as merely had the quality of being then in existence, but such as should be in existence at some future period ; and this period was either indefinite, or fixed to the determination of his own life, or of the life of the survivor of John Bramble and wife. I think it was the latter he had in view. For, although the word then is sometimes indefinite, and does not designate a point of time, but merely a succession of events, yet, in this connexion, I think it is otherwise. The devise is to them and the longest liver of them, and then to their offspring if any. If any, when ? The answer seems to be echoed by the clause, If any then; at that time. To what could he be considered as so naturally referring, as to that time of which he had just spoken, namely, the termination of the particular estate ? Can he be supposed to have referred ra *106 ther to the time of his own death, to which there had been no manner of allusion ? Had such been his design, he would have said, if any at the time of my death, as that event had not been before mentioned. Can he be supposed to have intended no definite period,—to have meant, if any in the long succession of generations ? I think not. His daughter had issue at that time ; and had his mind been directed to the failure of the line of succession, he would have used language in reference to the continuance of offspring, rather than these terms which so strongly imply a reference to some definite period. Instead of the words to their offspring if any, he would have said, in reference to the known existence of children at that time, to their offspring as long as there shall he any. But this was not his design; and, as he had just provided that Bramble and wife should have the estate during the life of the longest liver of them, he added, and then to their offspring if any; not deeming it necessary to repeat at the death of the longest liver of them. This construction of the words in question is strengthened, instead of being impugned, by a reference to the subsequent part of the clause, in which the testator in default of offspring of his daughter, devises the estate to Molly Baynes’s and JYancy Ashley’s offspring, if they have any. Now, in this devise, unquestionably, the words if they have any, mean if they have any at the time of the death of the survivor of Bramble and wife. For, as Molly Baynes and JYancy Ashley took nothing themselves, their offspring could only take as purchasers. The word offspring did not designate the line of succession, but pointed to some particular offspring. And as they too had children at the time, the testator could only have used the terms to shew, that he did not mean those who happened then to be in existence, but those who might happen to be in existence at a particular time; that is, at the death of the surviving tenant for life. If then, the words if there be any, have this meaning in this part of the clause, the words if any, in the former part of the same sentence, may be fairly interpreted in the same manner.
*107 Having thus established, that the true interpretation of the limitation is, to J. B. and wife during the life of the longest liver of them, and then to such of their offspring as there might be at the death of the survivor, thus making the word offspring a word of purchase and not of limitation; it is sufficiently obvious, that the subsequent words in default of such offspring, can mean nothing more. If the former do not amount to an indefinite limitation to the issue, neither can the latter : for, the words such offspring, mean such as were just mentioned; that is, offspring living at the death &c.
This construction of the testator’s will is, however, resisted on the ground of principle and authority. It is said, that the testator did not design the estate to go over to the offspring of Molly Baynes and JYancy Ashley, as long as there were any descendants of his daughter Lydia by John Bramble: this cannot be denied. It is then said, that if the words are not construed to give an estate tail, the descendants of Lydia, after the first generation, would be cut off, since the offspring, if they took as purchasers, would only take estates for life, there being no inheritable words in the bequest to them. This position cannot be admitted. To sustain it, a variety of cases are cited, some of which I shall examine. In Doe v. Applin, 4 T. R. 82. the devise was to A. for life, and after his decease to and amongst his issue, and in default of issue, then over: A. took a fee tail; and for this obvious reason, that as the issue could not take more than an estate for life for want of words of inheritance, the estate would go over from the grandchildren, notwithstanding the clear intent to postpone the remainder so long as there should be issue or descendants of A. In Doe v. Smith, 7 T. R. 531. the devise was to A. and the heirs of her body forever, as tenants in common and not as jointenants, and in case she died before twenty-one or [and] without leaving issue of her body, then to B.—Held, A. took an estate tail, avowedly upon the necessity to effectuate the general intent. And lord Kenyon said, “ here are no words of limitation added to the estate given to the children (sup *108 posing they took as purchasers) and yet the remainder over is not to take effect, until there was a general failure of her issue, so that there must be an estate to comprehend all her children forever.” So, in Doe v. Goldsmith, 7 Taunt. 209. the devise was to F. G. for life, and immediately after his decease to the heirs of his body lawfully to be begotten, in such parts or shares as he should by deed or will appoint, and in default of such heirs of his body, then immediately after his decease over to J. G. And it was held, that F. G. took an estate tail; chief justice Gibbs resting it upon the ground, that this was necessary to effectuate the general intent in behalf of the issue; the testator having clearly shewn his design “ that the estate should never go to J. G. as long as there was issue of F. G.” which could not be' the case there, without implying a fee tail, since the issue, if they took as-purchasers, took only an estate for life. So too, in Doe v. Cooper, 1 East 229. the devise being to R. C. for life, and after his decease, to his issue as tenants in common, but if he die without leaving issue, then to E. H.— the first taker took an estate tail. This case was determined expressly on the authority of the former cases, and therefore rests upon the same foundation. In all these cases,-then, the want of superadded words of inheritance upon the devise to the issue, so as to give them heritable estates instead of estates for life, was the obvious, and, in some of them, the avowed principle of decision. For, if we attend to the course of argument, in all of them, both of the bar and bench, it is very manifest that the power of appointment, the direction to divide the estate amongst them, and the provision that they should hold as tenants in common, would, in these cases, as in Doe v. Laming, have prevented the implication of an estate tail, if there had been superadded words of inheritance. Thus, in Doe v. Cooper, lord Kenyon, speaking of Atherton v. Pye, 4 T. R. 710. said, “ in that case there were words of limitation added to the devise to the daughters, and this forms a principal ground of distinctionand in Doe v. Smith, in speaking of Doe *109 v. Laming, which had been cited, he said, “that case is distinguishable from this, for there were words of limitation superadded.” Indeed, even with this foundation for the cases cited, they are by no means without opposition. The case of Doe v. Applin is considered in Burnsall v. Davy, 1 Bos. & Pull. 221. as going further than any case, in giving an estate tail to the first taker, by the rejection of the word amongst; that is, by considering the word issue as a word of limitation, notwithstanding the authoritative provision, that they should take in a manner incompatible with the notion of an inheritance. Accordingly, in the case of Hockley v. Mawbey, (before cited) the implication of an estate tail did not arise, though there were no words which would give an inheritance to the issue. But, where there are such words, I imagine the decisions are uniform. Thus in Doe v. Ellvey, 4 East 313. the devise being to A. and to the issue of his body, his, her or their heirs, equally to be divided if more than one, and if A. have no issue, then over; A. took but an estate for life. In Doe v. Barnsall, 6 T. R. 30. where the devise was to A. and the issue of her body as tenants in common, but in default of such issue, or being such, if they should all die under twenty-one and without leaving issue, then over; A. took only a life estate. Lord Kenyon, who had decided several of the former cases, said—“I agree that the limitation to M. O. was for life only, and the limitation to her children [issue] was to them as purchasers; and it certainly is sufficient to carry to them some quantity of estate. If the plaintiff’s counsel had succeeded in proving, that there was nothing [any thing] to be collected from the will, to shew that the children were only to take for life, then according to the case of Roe v. Grew, [2 Wils. 322.] the court would have endeavoured to convert the estate to M. O. into an estate tail, in order to effectuate the intent of the devisor.”
If, then, the existence of an inheritable estate in the issue or offspring, is the point upon which those cases turn in which there is a limitation to the issue to take in a manner *110 different from the law of descents, then I say, that that is furnished, in the case before us, by the statute of 1785, which declares, that a fee shall be construed to be conveyed where there is no restriction either by express words or by construction of law. If this statute has any-operation upon the case, then the offspring of Bramble and wife, living at the death of the survivor of them, would have taken a fee simple estate in remainder; and thus, the whole generation of the testator’s daughter, would in succession have come to the estate, unless it should have been aliened by those in whom it might vest. And thus, there be no ground for implying an estate tail, by forcibly converting a designation of the persons to take, into words of limitation.
The will in this case, having been made subsequent to the statute of 1785, must be under its influence upon general principles, unless some reason can be shewn for the contrary. I confess I see none. Enacted at the same session and contained in the same statute, and immediately succeeding the section respecting estates tail, I should think it not unreasonable to suppose that it might have been intended directly to modify it. But whether this was designed or not, so it is, that here is a solemn act of the legislature, prescribing a rule for the construction of instruments. What authority have we to disregard it, even in the construction of wills according to the direction of the preceding clause? Is it because that clause declares, that the construction shall be “ as the law aforetime was?” Does this lock up the case from the operation of all legislation, except the clause respecting limitations in tail ? Do the. terms as the law aforetime was, require us not only to look back to the law of entails as it existed before the act of 1776, but to govern ourselves by the state of the law of that day in all other respects? Was it intended, as was very pertinently asked by judge Green, in Bells v. Gillespie, 5 Rand. 291. to refer to all the decisions in England and Virginia prior to 1776, as the rules for decision in all future time, without regard to the effect which future laws might have upon the reasons *111 upon which these decisions were founded? I certainly should have answered these questions in the negative, with the utmost confidence, but that it is manifest there is a difference of opinion on this most important point between the members of this court. Such, at least, appears to me to be the case. In the case of Goodrich v. Harding, 3 Rand. 280. the subject seems to have presented itself to the consideration of the court, but the question was waived by all the judges. In the case of Bells v. Gillespie, the testator after devises to several sons, bequeathed “ to his son Pleasants a certain tract of land to him and his heirs, after the decease of his wife; and further provided, that if either of his sons should die without lawful issue, the part allotted to him should be divided among his surviving brothers and judge Green, in his opinion, distinctly avows that the statute of 1785 was decisive to give the surviving brothers a fee, if they took any estate, and that Pleasants, therefore, took an estate tail, “ unless,” says he, “ we are not at liberty to take into consideration the effect of that statute in determining whether he took an estate tail or not.” This question he pronounces to be of great importance, and proper to be at once decided. He proceeds to discuss the subject at large, enforces the opinion that the statute of 1785 must be referred to, and concludes that Pleasants either had an estate tail and not a fee, by force of the will, or if he had an estate in fee, the limitation over to his brothers was void ; they having a fee by operation of the statute, and the limitation over being therefore not tied down to a life in being, which would have been the case had they taken only estates for life. In Jiggetts v. Davis, 1 Leigh 405. judge Green again recurs to this subject, refers to his opinion in Bells v. Gillespie, and again invokes the aid of the statute of 1785. In the same case, judge Cabell in giving his opinion (Id. 427.) speaking of the statute of 1785 respecting entails, and of the rules of construction recognized by it, said,— “It was, surely, competent to the legislature of 1785, to make any exceptions to or changes, in those rules, that it *112 thought proper, and it did make an exception as to deeds . . ‘ and wiiJs to be made alter the passing of that act, by declaring, in the sentence almost immediately succeeding, that every estate thereafter granted &c. should be deemed to be a fee, if a less estate be not expressly limited, or appear to have been granted &c. by construction or operation of law. It must be admitted, that this provision makes a most important change in one of the former rules of construction, and it is imperative on the courts. As to estates created since the act of 1785, the expression as the law aforetime was, must, therefore, be understood, as controlled by the clause just referred to. But with this exception, there is no difference between the construction of deeds, and wills, made before the statute of 1785 and those made since.”
Next comes the case of Ball v. Payne, 6 Rand. 73. Upon the point in question, I am not disposed to controvert the opinion there expressed, if indeed it were admissible to do so. There, the court having looked upon the words heirs of the body, as words of limitation, notwithstanding the provision for a division amoDg them, it was surely not competent to apply the statute of 1785, to vest a fee in those heirs who took no estate. But where the words are clearly used as a designatio persones, as I consider them in this case, the statute may be applied to enlarge the estate, and thereby effectuate the whole of the testator’s intentions. And this course is more reasonable, than to reject, in effect, the strong expressions, which shew that the offspring were designed to take as purchasers. It is more reasonable than to convert those expressions into a limitation creating an estate tail, and defeat the object of the testator.
In this opinion, I would be distinctly understood as nowise contending for the application of the statute, where the word issue is used as a word of limitation. Thus, if an estate be given to A. for life, remainder to the heirs of his body, and if he die without issue, over; the words heirs of the body, being words of limitation, cannot be converted by the statute into words of purchase, and considered as giving a fee *113 to the issue. Such a construction would be subversive of every principle. But, where the limitation is to offspring or issue, so designated and pointed out, as to malee those words, words of purchase instead of limitation,—the intention of the testator is best subserved, the statute of 1785 dispensing with words of inheritance is respected, and the clause respecting estates tail is not infringed, when we consider the statute as giving a fee to those, who, but for it, would have only an estate for life.
Upon the whole, I am of opinion, that John Bramble took only an estate for life; and the course of my remarks have shewn that the children of Lydia by him could not have taken any vested interest. Therefore, I think the judgement ought to be affirmed.
Judgement reversed, and judgement entered for the appellants.